Price 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-93-226-CV





JACK N. PRICE,



 
 APPELLANT


vs.





GALLERIA OAKS ASSOCIATES,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT


NO. 92-03816, HONORABLE JERRY DELLANA, JUDGE PRESIDING



 





 Galleria Oaks Associates, appellee, sued Jack N. Price, appellant, and Jana Cotton
as co-tenants for rental payments due under a lease. Cotton filed for bankruptcy and was
dismissed from the suit. Price denied liability, claiming that Cotton had been fraudulently induced
to sign the lease. After the close of evidence, the trial court permitted Galleria Oaks to file a trial
amendment adding estoppel and waiver as defenses to Price's defense of fraudulent inducement. 
The jury found that Price and Cotton were fraudulently induced to sign the lease, but that Price
had waived any right to complain of that fraud and was estopped from denying the lease's validity. 
The jury further found that Galleria Oaks' actual damages were $13,273. The trial court,
however, rendered judgment notwithstanding the verdict for Galleria Oaks for $21,088.80 in
actual damages. Price appeals, complaining in five points of error that the trial court erred in (1)
rendering judgment on the verdict because the evidence was legally insufficient to support a
finding of waiver and that the waiver question was improper as a matter of law; (2) rendering
judgment on the verdict because the evidence was legally insufficient to support a finding of
estoppel and that the estoppel question was improper as a matter of law; (3) permitting a trial
amendment after the close of evidence; (4) rendering judgment notwithstanding the verdict for
damages in excess of the jury's award; (5) allowing proof and making an award of attorney's fees. 
We will modify the judgment and, as modified, affirm.


FACTUAL AND PROCEDURAL BACKGROUND
 

 In 1989, Cotton entered into an agreement with NCNB of Texas National Bank,
through its wholly-owned subsidiary Financial Resource Management, Inc. (FRMI), to lease Suite
102 of the Galleria Oaks Shopping Center. Suite 102 was occupied by Pauletta's Place, a business
Cotton was purchasing. To provide adequate credit and financial capacity, NCNB required a co-signer as a condition of leasing the property to Cotton. Price, Cotton's father, agreed to co-sign
the lease.

 Subsequently, Cotton became delinquent in the payment of rent on Suite 102. 
During this period, NCNB entered into negotiations to sell the entire shopping center to Metro
Pacific Group. Scott Looney, President of Metro Pacific, and Joe McAllister, a local real estate
agent, negotiated on behalf of Metro Pacific. A contract of sale was executed by the parties and
later assigned by Metro Pacific to Galleria Oaks. (1) Before it would accept that assignment,
Galleria Oaks required Metro Pacific to resolve the problem concerning Cotton's delinquency on
the lease of Suite 102. Looney received NCNB's permission to negotiate directly with Cotton. (2) 
Since Looney had other tenants willing to lease Suite 102, Looney and Cotton discussed moving
Cotton's business to Suite 104 and negotiated conditions of a new lease. According to Cotton's
testimony, Looney told her the monthly rental charge for Suite 104 would be $1,656 and that
there would be no common-area charge, no maintenance charge, and no other extra charges. 
Looney also told Cotton that she could use the shopping center's sign letters for advertising and
that she would be given a "hold-harmless" agreement stating that if, after six months, the
agreement was not working out, she could move out without penalty and without liability for
delinquent rent or other charges. Cotton was obligated to pay a security deposit of $7,746 in
exchange for the landlord's forgiving back rent for Suite 102. Cotton typed a letter reflecting the
agreement, signed it, and mailed it to Looney in California for his signature. 

 Approximately one month later, a leasing agent from FRMI brought a lease
agreement covering Suite 104 to Cotton for her to sign. Cotton testified that she telephoned
Looney and told him that she had been presented with a lease that did not reflect their agreement. 
She said Looney told her to sign the lease because he was signing the letter agreement Cotton had
sent him. Cotton signed the lease on August 1, 1991, and obtained Price's signature. On August
2, Cotton was presented with an estoppel letter (labelled "Tenant Estoppel Letter") for her
signature. Cotton signed this document also, but Price's signature was not required or obtained.

 After paying rent on Suite 104 for September 1991, Cotton failed to pay the
October and November rents timely. Galleria Oaks contacted an attorney to obtain Cotton's
payment of those rents. An agreement was reached whereby Cotton made a lump-sum payment
for the October, November, and December rent. In January 1992, however, Cotton again became
delinquent on her rent. Cotton testified that at this time she informed Galleria Oaks' attorney
about her letter agreement with Looney, which stated different rental obligations. After Cotton
again failed to make her rent payment in February 1992, Galleria Oaks changed the locks and
posted a notice of eviction for Suite 104. Galleria Oaks then brought this suit for the deficiency
owed by Cotton and Price.

 In defending the suit, Price claimed that Cotton was fraudulently induced into
signing the lease. The case was tried to a jury. Galleria Oaks introduced into evidence an
estoppel letter signed by Cotton stating that there were no outside agreements and that the lease
to Suite 104 represented the parties' entire agreement. Both Price and Galleria Oaks introduced
testimony regarding the circumstances surrounding the signing of the estoppel letter and about
Cotton's state of mind when she signed the letter. After the close of evidence, Galleria Oaks
requested a trial amendment for the purpose of adding estoppel and waiver as defenses to Price's
fraudulent-inducement defense. The trial court permitted the amendment, concluding that the
issues of estoppel and waiver had been tried by implied consent. Jury questions were submitted
on the issues of fraudulent inducement, estoppel, and waiver.

 The jury found that Price and Cotton had been fraudulently induced to sign the
Suite 104 lease agreement. The jury also found, however, that Price and Cotton had waived any
right to complain about that fraud and that they were estopped to deny the validity of the lease. 
Finally, the jury found damages of $13,273 and attorney's fees of $23,750. The trial court
granted judgment notwithstanding the verdict and rendered judgment that Galleria Oaks recover
from Price $21,088.80 in damages, plus attorney's fees.


DISCUSSION


Trial Amendment

 In his third point of error, Price complains that the trial court erred in granting
leave for Galleria Oaks to file its trial amendment adding the defenses of estoppel and waiver. 
The appellate standard for reviewing the granting of a trial amendment is abuse of discretion. A
trial court abuses its discretion when it acts in an unreasonable and arbitrary manner, or when it
acts without reference to any guiding principles. Beaumont Bank, N.A. v. Buller, 806 S.W.2d
223, 226 (Tex. 1991); Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex.
1985), cert. denied, 476 U.S. 1159 (1986). We may not reverse for abuse of discretion merely
because we disagree with a trial court's decision, if that decision was within the trial court's
discretionary authority. Buller, 806 S.W.2d at 226; Downer, 701 S.W.2d at 242. 

 The trial court's order stated that trial by implied consent was the reason it was
allowing the trial amendment after the close of evidence. Price thus asserts that our standard of
review should be whether the issues of estoppel and waiver were in fact tried by consent. We
disagree. The trial court's action was to allow a trial amendment, and that is the action we are
called on to review. It is true that when there is in fact trial by consent, a trial court should freely
permit the filing of a trial amendment. See Kensinger v. McDavid, 380 S.W.2d 54, 58 (Tex. Civ.
App.Houston 1964, no writ). However, it does not follow that if there is no trial by consent,
granting a trial amendment is automatically error; even without trial by consent, a trial judge
would have broad discretion in deciding whether to allow such an amendment. Mergele v.
Houston, 436 S.W.2d 955-56 (Tex. Civ. App.San Antonio 1968, writ ref'd n.r.e.). Further,
we are not bound by the trial court's conclusions of law that the issues of estoppel and waiver
were tried by consent. Instead, we must sustain the trial court's judgment if it is correct on any
theory of law applicable to the case. Custom Leasing, Inc. v. Texas Bank & Trust Co., 516
S.W.2d 138, 142 (Tex. 1974) (citing Gulf Land Co. v. Atlantic Ref. Co., 131 S.W.2d 73, 84
(Tex. 1939)). Thus, a determination of whether the standards for trial by implied consent have
been met is not necessary to our review of the propriety of the trial amendment. (3)

 In reviewing the granting of a trial amendment for abuse of discretion, we look for
prejudicial surprise. 2 Texas Civil Practice § 7.32(a), at 177 (Diane M. Allen et al. eds., 1992
ed.). Trial amendment rules should be liberally construed, and pleadings should be amended
freely when doing so will further the presentation of the merits of the action and the objecting
party fails to satisfy the court that allowance of the amendment would prejudice him. Tex. R. Civ.
P. 66; (4) see American Medical Int'l, Inc. v. Giurintano, 821 S.W.2d 331, 334-35 (Tex.
App.Houston [14th Dist.] 1991, no writ). The Texas Supreme Court in Greenhalgh v. Service
Lloyds Insurance Co. set forth the proper standard: unless the opposing party objects to the trial
amendment and shows prejudice or surprise, the trial court has no discretion to refuse a trial
amendment. 787 S.W.2d 938, 939 (Tex. 1990).

 It is the obligation of the party opposing the trial amendment to make a clear
objection showing surprise or prejudice. Id. A plea of surprise, a motion to reopen, or a motion
for continuance could indicate that the opposing party might be prejudiced and, therefore, allow
the court an opportunity to remedy the situation. See Jeter v. Associated Rack Corp., 607 S.W.2d
272, 277 (Tex. Civ. App.Texarkana 1980, writ ref'd n.r.e.), cert. denied, 454 U.S. 965 (1981). 
Absent these indications in the objection, however, some courts have held that the opposing party
waives the complaint. Id.; Mergele, 436 S.W.2d at 956; but see Hardin v. Hardin, 597 S.W.2d
347, 349 (Tex. 1980) (requiring only that record show surprise in fact, even without previous
objection stating that party was surprised). Affirmative steps showing prejudice must be taken,
"because the error, if any, lies in depriving counsel of an opportunity to properly protect his or
her position, rather than in allowing the amendment." 2 Texas Civil Practice, supra, § 10.11, at
498; see Galaviz v. Langdeau, 352 S.W.2d 352, 355 (Tex. Civ. App.Austin 1961, no writ).

 In the present case, Price objected only generally to the trial amendment, then
amended his earlier objections to the charge to include an objection that estoppel and waiver were
not supported by the pleadings. Price made no showing of prejudice or surprise, nor did he ask
to reopen the case or move for a continuance. It is likely that the omission of a specific objection
is enough to support a waiver of Price's complaint about the trial amendment. However, even
if we review the record for prejudice or surprise in fact, we fail to find clear indications of such.

 While a determination of trial by consent is limited to an inquiry into the evidence
in the case, Gulf States Abrasive Mfg. v. Oertel, 489 S.W.2d 184, 186 (Tex. Civ. App.Houston
[1st Dist.] 1972, writ ref'd n.r.e.); 2 Texas Civil Practice, supra, § 7:31, at 174-75, determining
prejudice or surprise from the granting of a trial amendment allows a broader review of the entire
record. See 2 Texas Civil Practice, supra, § 10.10, at 484-85; City of Houston v. Hagman, 347
S.W.2d 355, 359 (Tex. Civ. App.Houston 1961, writ ref'd n.r.e.).

 A review of the statement of facts in the present case highlights several points
relevant to prejudice. First, a conversation that occurred midway through the trial indicates that
both Price and Galleria Oaks' attorney were aware that estoppel was a separate fact issue for the
jury:


[Galleria Oaks' Attorney]: That's a fact issue, if in fact it was induced by fraud. 
Understand that that is why we are here. I wouldn't have thought that anybody
was unclear as to my position. I would think you would be estopped by that
estoppel letter, frankly.


[Price]: Well, that's a fact issue, too; argue that to the jury . . .


. . . .


[Galleria Oaks' Attorney]: To me its resolved very easily. I agree that the lease
travels through with the baggage it acquired at the beginning. We are assignee of
the lease with its baggage. But she is estopped from asserting it was induced by
fraud because she gave us a letter that said it's valid and in full force and effect. 
That's the mechanism we use to make sure we got a good, clean suitcase and not
something that's got barnacles all over it.


[Price]: That's a fact issue, Your Honor.


[Galleria Oaks' Attorney]: We may submit an issue on that, but that doesn't, I
don't think, change the posture of the case nor does it change the posture of this
particular point about hearsay.


[Price]: Well, I'm not sure maybe I'm agreeing with you now. I don't know. We
appear to agree that, as he said, it carries the baggage, the lease is subject to
defenses.


[Court]: Yes.


[Price]: The question he says is but I have got a laydown because I have the
estoppel letter. I'm not sure whether he's saying I got the laydown as a matter of
law or that's a laydown as a fact matter. But the estoppel letter won't do it. It was
just signed at a time when my client believed before she discovered that there was
any problem, so that's a fact issue at a time when she believed that she had been
told correctly and that things would work the way they would because that thing
was signed -- let's see. What was the sequence? The whole sequence only took
about seven days.


[Galleria Oaks' Attorney]: If it's not a question of law, it will be a question of
fact.


[Court]: I think we are going to have to submit that.


This conversation indicates that both parties knew that estoppel was an issue that was material to
the fraudulent inducement defense asserted by Price. 

 In addition, when the trial court submitted its proposed jury questions to the
attorneys for objection, Price initially did not object on the ground that the questions on waiver
and estoppel were not supported by the pleadings. Rather, he objected only on no-evidence and
insufficient-evidence grounds. Only when Galleria Oaks sought its trial amendment to add
estoppel and waiver did Price object that the jury questions on those defenses were not supported
by the pleadings. This sequence of events raises an inference that when the charge was initially
prepared, Price believed that estoppel and waiver were issues in the case to be submitted to the
jury.

 Finally, it is noteworthy that when authenticating and offering the estoppel letter
and questioning witnesses about it, both parties treated the letter as being separate and independent
of the lease. Price and Galleria Oaks' attorney questioned witnesses about its meaning and the
circumstances surrounding its execution. Again, although a determination of trial by implied
consent allows consideration only of the evidence and its relevance to pleaded and unpleaded
issues, we are not so limited when reviewing the propriety of a trial amendment. We may review
the entire record for evidence of surprise and prejudice in a trial-amendment question and look
at all indications of the parties' understanding of the posture of their claims and defenses. Ortale
v. City of Rowlett, 696 S.W.2d 640, 641-42 (Tex. App.Dallas 1985, writ ref'd n.r.e.). Our
review of the entire record in this case reveals evidence tending to show that Price and Galleria
Oaks understood or assumed that estoppel and waiver were live issues in the case.

 It is our duty to sustain the trial court's judgment, and thus the granting of the trial
amendment, if it is correct on any applicable theory of law. Custom Leasing, 516 S.W.2d at 142. 
We conclude that the record does not reflect clear prejudice or surprise to Price by permitting the
trial amendment for the purpose of pleading estoppel and waiver. The parties apparently knew
during the course of the trial that estoppel was a material issue in the case, largely because of the
existence of the "Tenant Estoppel Letter" signed by Cotton. Absent a specific objection by Price
alleging prejudice or surprise, it is not apparent from the record that Price was prejudiced by the
trial amendment after the close of evidence. We cannot say that the trial court abused its
discretion in allowing the trial amendment. We overrule point of error three.



Legal Sufficiency of the Evidence

 In points of error one and two, Price argues that the evidence was legally
insufficient to establish estoppel and waiver against him and that submitting estoppel and waiver
questions was error as a matter of law. In reviewing the legal sufficiency of the evidence, we
consider only the evidence and inferences tending to support the finding of the trier of fact and
disregard all evidence and inferences to the contrary. Alm v. Aluminum Co. of Am., 717 S.W.2d
588, 593 (Tex. 1986), cert. denied, 498 U.S. 847 (1990); Garza v. Alviar, 395 S.W.2d 821, 823
(Tex. 1965). See generally William Powers, Jr. & Jack Ratliff, Another Look at "No Evidence"
and "Insufficient Evidence", 69 Tex. L. Rev. 515 (1991). If there is any evidence of probative
force to support the finding, the point of error must be overruled. In re King's Estate, 244
S.W.2d 660, 661 (Tex. 1951).

 Price complains that there was no evidence to establish the scienter requirements
of estoppel and waiver. He testified that he had no knowledge of the estoppel letter or of the
misrepresentations by Looney. He asserts that while an issue of estoppel and waiver might exist
against Cotton as the signer of the estoppel letter and participating tenant, Price could not be
estopped or have waived his right to assert fraudulent inducement because he did not know of the
estoppel letter, did not sign it, and did not intend or know of Galleria Oaks' reliance on it. Price
also declares he did not knowingly or intentionally waive his right to claim fraudulent inducement.

 Under paragraph 9.2 of the Suite 104 lease, Price and Cotton, as tenants, agreed
to furnish, as a condition of the lease, a signed estoppel letter within ten days after receiving the
letter from Galleria Oaks, the landlord. (5) Paragraph 12.9 of the lease, entitled "Multiple Tenants,"
declares that either Price or Cotton, as a co-tenant, was empowered to bind both co-tenants to any
written modification, amendment, exhibit, or other document "herein referred to" and that
Galleria Oaks, as landlord, was entitled to rely on any such document as if both the tenants had
signed it. Price co-signed the lease, presumably intending that the lease be valid. Under
paragraph 9.2, the signed estoppel letter was a condition of a valid lease. The estoppel letter was
signed by Cotton and, according to paragraph 12.9, is valid as if Price had also signed it. Since
Price intended for the lease to be valid, he also must have intended that all the conditions
precedent to the validity of the lease be performed. Therefore, the record contains some evidence
to support an inference that Price intended the estoppel letter to be signed, thus satisfying any
scienter requirements in the issues of waiver and estoppel.

 In addition, the scienter requirement for waiver is whether Price intended to waive
his defense of fraud. Price claims that as the non-participating tenant, he did not know of
Looney's representations, nor did he know the estoppel letter existed. Custom Leasing, Inc. v.
Texas Bank & Trust Co. shows that in order to be actionable, a misrepresentation may be made
directly or by manifestation to a third person intended to reach the other. 516 S.W.2d at 142
(citing Restatement of Restitution § 8 (1957)). It logically follows that if Price can claim
fraudulent inducement because of misrepresentations to Cotton of which he was unaware, Galleria
Oaks should be entitled to assert waiver and estoppel against Price because of actions by Cotton
of which he was unaware.

 We find sufficient evidence in the record to support the jury's findings of estoppel
and waiver against Price. Points of error one and two are overruled.


Judgment Notwithstanding the Verdict

 In his fourth point of error, Price asserts that the trial court erred in rendering
judgment notwithstanding the verdict raising the damages awarded under the lease to $21,088.80
from the $13,273 sum found by the jury. Our standard of review for a judgment notwithstanding
the verdict is whether a directed verdict would have been proper on the issue in question. See
Tex. R. Civ. P. 301. A trial court may grant a judgment notwithstanding the verdict only if no
evidence exists to support the jury's finding, or if the matter is established conclusively as a
matter of law. Leyva v. Pacheco, 358 S.W.2d 547, 550 (Tex. 1962); New Process Steel Corp.
v. Steel Corp. of Tex., Inc., 703 S.W.2d 209, 216 (Tex. App.Houston [1st Dist.] 1985, writ
ref'd n.r.e.). A judge may not disregard the jury's negative findings and substitute affirmative
findings unless the evidence conclusively establishes the finding. New Process Steel, 703 S.W.2d
at 216. If the evidence conflicts, or if reasonable minds could draw different conclusions from
the evidence, the jury must resolve the fact issue. Id.; see also 4 Texas Civil Practice, supra,
§ 26.13, at 455. On appeal, the court must look only to evidence that would sustain the jury's
finding to determine if the trial court properly granted the motion for judgment notwithstanding
the verdict; if there is some evidence to support the jury's finding, granting the motion was error. 
Best v. Ryan Auto Group, Inc., 786 S.W.2d 670, 671-72 (Tex. 1990). 

 Greg Greenstein, a general partner in Galleria Oaks and president of JG
Management, Inc., which managed Galleria Oaks, testified about Galleria Oaks' damages under
the lease. Because he had an ownership interest in Galleria Oaks, and because he worked for
Galleria Oaks' management company, Greenstein was an interested witness. When a fact issue
is proven by testimony from an interested witness, the general rule is that the jury must determine
the witness's credibility. Collora v. Navarro, 574 S.W.2d 65, 69 (Tex. 1978). The supreme
court has said, however, that an interested witness's testimony may, in limited circumstances,
establish a fact conclusively. Id. The "credibility" standard has been explained as follows:


[T]he testimony of an interested party or witness is not wholly without probative
force. An instructed verdict based on such testimony favorable to the party with
whom the witness is identified is proper when the testimony pertains to matters
reasonably capable of exact statement, is clear, direct, and positive, is internally
devoid of inconsistencies and contradictions, and is uncontradicted either by the
testimony of other witnesses or by circumstances--in short, when there is nothing
to cause any reasonable suspicion as to its truth.


4 Texas Civil Practice, supra, § 21.58(a), at 149; see also Collora, 574 S.W.2d at 69.

 We conclude that the evidence introduced regarding Galleria Oaks' damages does
not meet this conclusiveness standard. For example, Greenstein testified that the charges assessed
against Cotton and Price included charges and rents through September 1992. Price, however,
presented evidence tending to show that the lease actually ended June 30, 1992, thus raising an
inference that charges for rents and other expenses, including "administrative costs," incurred by
Galleria Oaks thereafter were not recoverable under the terms of the lease. In addition, the term
"triple net," or "NNN," was given at least two meanings during the course of the trial. Cotton
testified that she understood the term to mean that her monthly rent was all she would have to pay. 
Greenstein testified that "triple net" meant a tenant owed a pro rata share of the taxes, insurance,
and maintenance costs of the shopping center property. Another area of damages that was unclear
from the testimony was whether Galleria Oaks was entitled to a reletting commission from Cotton
and Price. Price contended that the reletting fees would have been incurred even if the lease with
Cotton had expired by its own terms and, therefore, Galleria Oaks should not be allowed to
recover reletting commissions incurred after July 1992, irrespective of the default. This same
theory also applies to the various cleaning costs and other costs associated with preparing the site
for a new tenant. According to Price, these costs would have been incurred in July 1992 by
Galleria Oaks regardless of whether Cotton defaulted on her lease.

 Because the evidence supporting the larger amount of damages was not clear,
uncontroverted, and free of inconsistencies, we cannot say that Greenstein's testimony, as an
interested witness, proved the additional costs as a matter of law. When facts are in conflict, the
jury must decide the issues. Thus, the trial court erred in rendering judgment notwithstanding the
verdict. We sustain Price's fourth point of error and modify the judgment to conform to the jury's
verdict awarding Galleria Oaks $13,273 in actual damages.


Attorney's Fees

 In his fifth point of error, Price complains that a lack of pleading and proof of
presentment precluded an award of attorney's fees to Galleria Oaks. To recover attorney's fees
in a suit on a written contract, a claim for attorney's fees must be pleaded and there must be proof
of presentment of the contract claim. See Tex. Civ. Prac. & Rem. Code Ann. §§ 38.001, .002
(West 1986). To recover attorney's fees for a contract claim, the claim must be presented to the
opposing party and that party must fail to render performance. No particular form of presentment
is required. Jones v. Kelley, 614 S.W.2d 95, 100 (Tex. 1981). We conclude there is adequate
pleading of attorney's fees, and our review of the statement of facts reveals ample evidence that
the claim for rent under the lease was adequately presented to Price and Cotton. Accordingly,
we overrule Price's fifth point of error.


CONCLUSION


 We modify the judgment to award actual damages of $13,273 to Galleria Oaks. 
As modified, we affirm the trial court's judgment.



 J. Woodfin Jones, Justice

Before Justices Powers, Aboussie and Jones

Modified and, as Modified, Affirmed

Filed: May 4, 1994

Do Not Publish
1. According to testimony, Metro Pacific assigned the contract for the shopping center to
"Galleria Associates." This suit, however, was filed by "Galleria Oaks Associates,"
presumably the same group as Galleria Associates. No party complains of this apparent
discrepancy. The appellee will be referred to herein as Galleria Oaks.
2. It is not clear from the record whether Looney's negotiations with Cotton took place
before or after the sale from NCNB (FRMI) to Metro Pacific. Testimony indicated that
Looney asked permission of NCNB (FRMI) and that the lease that was delivered to Cotton
was from an FRMI employee.
3. The trial court expressly found that estoppel and waiver had been tried by implied
consent. If that conclusion of law is correct, no prejudice or surprise could result from a trial
amendment on those issues. An essential question in determining whether there was trial by
implied consent is whether there is any evidence relevant only to establish estoppel or waiver. 
If all the evidence relevant to estoppel and waiver were also relevant to other pleaded issues, a
finding of trial by consent would be incorrect. Harrison v. City of San Antonio, 695 S.W.2d
271, 277-78 (Tex. App.San Antonio 1985, no writ); Purselley Indus., Inc. v. Engle, 717
S.W.2d 662, 665 (Tex. App.Tyler 1986, writ ref'd n.r.e.).
4. "[T]he court may allow the pleadings to be amended and shall do so freely when the
presentation of the merits of the action will be subserved thereby and the objecting party fails
to satisfy the court that the allowance of such amendment would prejudice him in maintaining
his action or defense upon the merits." Tex. R. Civ. P. 66.
5. Paragraph 9.2 of the lease provides:


Tenant agrees to furnish, from time to time, within ten (10) days after
receipt of a request from Landlord or Landlord's mortgagee, a statement
certifying, if applicable, all or some of the following: Tenant is in
possession of the Leased Premises; the Lease is in full force and effect;
the Lease is unmodified (except as disclosed in such statement); Tenant
claims no present charge, lien, or claim of offset against rent; the rent is
paid for the current month, but is not prepaid for more than one (1)
month. . . . Tenant's failure to deliver such statement, in addition to
being a default under this Lease, shall be deemed to establish
conclusively that this Lease is in full force and effect except as declared
by Landlord, that Landlord is not in default of any of its obligations
under this Lease, and that Landlord has not received more than one (1)
month's rent in advance.