**TEXAS BANK & TRUST COMPANY OF DALLAS, Appellant,**

v.

**CUSTOM LEASING, INC., Appellee.**

No. 563.

Court of Civil Appeals of Texas, Tyler.

July 22, 1971.

Rehearing Denied Sept. 2, 1971.

Stigall, Maxfield & Collier, John F. Maxfield, Dallas, for appellant.

Key, Carr, Evans & Fouts, Donald M. Hunt, Lubbock, for appellee.

DUNAGAN, Chief Justice.

This appeal involves but one aspect of a suit filed by Custom Leasing, Inc., to recover losses arising out of a series of forged instruments. As a result of a default judgment, severances, and pleas of privilege, only that portion of the suit in which Texas Bank & Trust Company of Dallas is defendant is before us for review. An interlocutory default judgment, and, after severance, a final judgment were entered against James E. Lyles in favor of appellee Custom Leasing. Suit is still pending in Midland against defendants George W. Gentry, Alma Gentry and Gentry Construction Company.

Briefly, the facts are these: Some time in April, 1963, James E. Lyles sought a loan of some $20,000.00 from the Texas Bank & Trust Company. He represented himself to be vice-president of Gentry Construction Company and that it was the company that desired the loan. Lyles supplied the Bank with a financial statement of the company, a list of the equipment to be mortgaged, credit references for the company, and a power of attorney purportedly signed by Mr. Gentry authorizing him to act on behalf of the company. He also, before the loan was closed, presented a corporate resolution bearing the corporate seal of Gentry Construction Company authorizing him to act on behalf of the company. The Bank checked the references, including Dun and Bradstreet, and approved a loan of $18,900.00. The note was executed by Lyles and purportedly by Mr. Gentry, individually and as president of the company. Mr. Gentry was president and Mrs. Gentry was secretary of Gentry Construction, and Lyles is the son of Mrs. Gentry. The equipment owned by the company was placed as security for the note, and Lyles executed the chattel mortgage as vice-president of the company.

The note was not paid after two extensions, and in an effort to collect the default note, Warren Sudduth, a vice-president of the Bank, who originally handled the note, went to Midland to see Mr. Gentry and Lyles. Failing to contact Gentry, Lyles was located and payment was demanded. Lyles at this point told Sudduth in private that the Gentrys' signatures to all of the papers, the note, chattel mortgage, corporate resolution, etc. had been forged. He asked Sudduth not to contact Gentry

in return for prompt payment of the note. Sudduth agreed. The Gentrys testified by deposition that at the time Lyles was dealing with the Bank, and later with Custom Leasing, he was in no way connected with Gentry Construction and had no actual authority to act for the company. He had at one time been an officer and director of the company. This connection had ceased in 1960, but he continued to work for the company until some time in 1962.

Lyles then approached Custom Leasing with the proposal that they purchase the earth moving equipment and trucks owned by Gentry Construction and lease the equipment back to Gentry Construction. Lyles told Custom Leasing that the Bank held a chattel mortgage on the heavy equipment. A telephone call was made from the office of Custom Leasing by Lyles to the Bank in Dallas. Representatives of the Bank and Custom Leasing discussed the mortgage and the equipment covered. A statement was made by the representative of the Bank that it did own the mortgage to secure the note of Gentry Construction and that it would release the mortgage for $19,089.00. The bill of sale and two lease contracts were executed between Custom and Lyles, individually and as vice-president of Gentry Construction, and purportedly by the Gentrys, individually and as officers of the company. Lyles delivered the original titles to the trucks, a financial statement, a tax return, and credit references for the company. Credit checks were made.

Custom thereupon issued two checks, one to Gentry Construction (which was cashed by Lyles), and one in the amount of $19,089.00 to cover a draft drawn on it by Texas Bank for the release of the mortgage.

After several months, the payments on the leases became past due. Suit was filed by Custom against Lyles, the Gentrys and Gentry Construction, to collect all monies due under the leases, a total of some $33,942.95. Lyles failed to answer, and an interlocutory default judgment was taken against him for the entire amount. In taking depositions of the Gentrys, Custom learned for the first time that the Gentrys were claiming that they did not sign any of the instruments involved in either the Bank loan and mortgage or the sale and lease-back transaction. Custom thereupon asked that the suit against Lyles on the leases be severed and final judgment be entered against him. This was done. Custom then joined the Bank as a defendant. The Bank's plea of privilege was granted, and the action against the Bank was severed and transferred to Dallas County. Trial on that portion was to a jury, and judgment was entered in favor of Custom for $11,000.00. Both the Bank and Custom perfected their appeals to this court.

We sustain appellant's first point of error which urges what is called an "election of remedies" by Custom. Accordingly, judgment of the trial court is reversed and a take-nothing judgment as against appellant Texas Bank & Trust Company of Dallas is rendered.

In Norris v. Wilkens, 3 S.W.2d 126 (Tex. Civ.App., Dallas, 1928, n. w. h.), the Court said:

> "The doctrine seems to be well established that, where a litigant chooses between two or more different and coexisting modes of procedure allowed by law on the same state of facts, an election of a remedy results (9 R.C.L. p. 956, § 1), and when, as the result of action taken, an advantage is gained or a detriment occasioned, the litigant is estopped to pursue any other coexisting mode of procedure." (Citing cases.)

In Seamans Oil Co. v. Guy, 115 Tex. 93, 276 S.W. 424, 426 (1925), the rule is stated thusly:

> " 'If one having a right to pursue one of several inconsistent remedies makes his election, institutes suit, and prosecutes it to final judgment or receives anything of value under the claim thus asserted, or if the other party has been affected

adversely, such election constitutes an estoppel thereafter to pursue another and inconsistent remedy. * * *' "

In 28 C.J.S. Election of Remedies § 8, p. 1073, it is stated:

" * * * Where a party has grounds to bring separate actions against different persons, and the maintenance of one necessitates the allegation of a fact, or the assumption of a position, inconsistent with, or repugnant to, the maintenance of another, he is bound by his election, and cannot proceed against the other; in other words, where a party has suffered an actionable wrong he will not be permitted to pursue inconsistent remedies against different persons. * * *"

In Arroyo-Colorado Nav. Dist. of Cameron and Willacy Counties v. State Nat. Bank of Brownsville, 90 S.W.2d 881 (Tex. Civ.App., El Paso, 1936, writ dism.), the court said:

" 'Thus the state and county had two remedies. It could have declared the depository contract void and pursued the funds that had been turned over to the Merchants' National Bank, as trust funds, or they could stand by the contract and sue on the bond. This latter remedy was the one pursued by the state and county. Appellant, as a surety on the bond, had no right to require them to elect to pursue some other remedy. * * *

" *'The state and county now have a final judgment on the depository bond, binding on all the parties except appellant. They have made their election to stand on the bond and they would not now be permitted to go back and bring a suit on the tort, to declare the bond a nullity and attempt to recover from the alleged tort-feasors. 15 Tex.Jur. p. 822: "Where a remedy has been pursuant to judgment, a resort to another remedy is precluded by the doctrine of res judicata." Marshall v. Mayfield (Tex.Com. App.) 227 S.W. 1097.'* "* (Italics by El Paso Court.)

Often what is spoken of in opinions as a choice between remedies is in reality a choice of "an alternative substantive right." Indeed, it is probable that some element either of ratification or of estoppel is at the root of most cases, if not all, in which an election of remedies, once made, is viewed as a finality. 116 A.L.R. 602.

However, the courts have generally overlooked this distinction and referred to an election of remedies in cases where, in more accurate language, they might have said that by pursuing a particular remedy the plaintiff made an election between inconsistent substantive rights. 116 A.L.R. 602. In our opinion the case at bar can probably be more accurately classified as an election between inconsistent substantive rights, rather than an election of remedies. In either event, the rule of election often presents difficulty when the subsequent suit is against different persons.

In the case of Mosher Mfg. Co. v. Eastland, W. F. & G. R. Co., 259 S.W. 253 (Tex.Civ.App., El Paso, 1924, writ ref.), the court said:

"An election of remedies arises when one having two coexistent but inconsistent remedies chooses to exercise one, in which event he loses the right to thereafter exercise the other. Ordinarily, this rule is not difficult of application when the subsequent suit is against the same defendant as in the original action, but when the subsequent suit is against a third person the pertinency of the rule is sometimes obscure and difficult of application.

"The doctrine of election of remedies is an application of the law of estoppel, either in pais or of record. * * *"

It is undisputed that Custom Leasing learned of the forgeries prior to the time they took a default judgment against Lyles. It is also undisputed that the $19,089.00 which Custom Leasing paid the bank in discharge of the note and lien, constituted a part of the consideration for the leasing

contract with Lyles and also constituted a part of the $33,942.95 judgment which Custom took against Lyles, i. e., the amount of the rental due under the lease-back contract was made up in part of the $19,089.00 Custom paid the Bank in order to get a clear title to the equipment.

Upon learning that the lease-back contract had been forged and that the Bank note had also been forged, two alternatives were open to Custom. First, Custom had the alternative of affirming the lease contract and suing Lyles, Gentry Construction Company and Gentry for breach of the lease-back contract and secure complete relief by a joint and several judgment for damages, or secondly, Custom could have elected to disaffirm the lease-back contract and also disaffirm its agreement to purchase the note and lien from the Bank and have sued Lyles and the Bank. Had Custom adopted the latter alternative, Custom could have recovered the $19,089.00 from the Bank for money had and received. Without question there was a failure of consideration since the lien which Custom paid to extinguish was worthless. Upon recovering the $19,089.00 from the bank, Custom would have then been in a position to have recovered the remainder of its damages against Lyles for fraud. Had Custom adopted this alternative, the Bank would have been afforded some protection in that the Bank would have been in a position to have filed a cross-claim against Lyles, Gentry Construction and Gentry for the $19,089.00 which Custom was claiming against the Bank. The Bank would have been in a position to assert a claim not only against Lyles personally but also to claim apparent authority of Lyles to act for Gentry Construction thereby making both Lyles and the company jointly and severally liable on the $19,089.00 note held by the Bank. This possibility is amply demonstrated by the fact that the jury found that Lyles had "apparent" authority to act for Gentry Construction.

Custom did not, however, choose to follow the latter alternative. Rather it chose to affirm the lease-back contract and affirm its bill of sale to the equipment just as if the sale and lease-back agreement were valid. Custom did this knowing that all signatures on all the instruments involved in this litigation were forgeries except that of Lyles. By so doing, Custom affirmed and ratified all of the previous transactions by which they acquired title to the equipment including the purchase of the outstanding lien thereon held by the Bank.

Consequently when Custom took judgment against Lyles alone for the sum of $33,942.95, Custom recovered all the damages it was entitled to receive. The judgment included the $19,089.00 which Custom had theretofore paid the Bank to extinguish the lien. Therefore, by choosing this remedy Custom abandoned and waived any right which it migh have had to pursue its claim against the Bank.

Since Custom elected to pursue its claim against Lyles, it cannot be said with certainty that its action in so doing was without prejudice to the Bank. That is, by affirming the lease-back contract and proceeding to judgment against Lyles alone, Custom prevented the Bank from intervening in such suit. Furthermore, since Custom now has a judgment against Lyles for the full amount of its damages including the $19,089.00 in question, the Bank is now prohibited from proceeding against Lyles. The judgment which Custom now holds against Lyles stands as a complete bar to any cause of action which the Bank might have. Thus we think Custom's election adversely affected the rights of the Bank.

Had Lyles paid Custom's $33,942.95 judgment, Custom would certainly have no claim against the Bank. Apparently, Custom is attempting to hold the Bank liable for the $19,089.00 because they have been unable to collect their judgment from Lyles. The solvency of Lyles is not material. For all we know Lyles may have already discharged the judgment.

The Bank, of course, is not jointly and severally liable with Lyles and Custom does not so contend.

As we view the record, Custom elected whom they would hold responsible for the $19,089.00. They elected to hold Lyles responsible. Custom cannot now disregard that election and seek another judgment against the Bank for the very same $19,089.00 which was included in their judgment against Lyles. Any other conclusion would allow Custom a double recovery to the extent of $19,089.00.

We believe the judgment must be reversed and rendered in favor of the Texas Bank & Trust Company of Dallas. Accordingly, it is so ordered.

Reversed and rendered.