CUSTOM LEASING, INC., Petitioner,

v.

TEXAS BANK AND TRUST COMPANY
OF DALLAS, Respondent.

No. B–4254.

Supreme Court of Texas.

Nov. 20, 1974.

Rehearing Denied Dec. 18, 1974.

Key, Carr, Evans & Fouts, Donald M. Hunt, Lubbock, for petitioner.

Stigall, Maxfield & Collier, John F. Maxfield, Dallas, for respondent.

DANIEL, Justice.

This is our second time to consider appeals from this one of four severed causes of action which grew out of a case originally filed in Lubbock County by Custom

Leasing, Inc., on January 19, 1965, against Gentry Construction Company, Inc., George W. Gentry, Alma Gentry, and James E. Lyles, for recovery of past due rentals and possession of dirt moving equipment alleged to have been purchased by Custom Leasing from and then leased back to Gentry Construction Company. Texas Bank and Trust Company of Dallas was later joined as a defendant on March 29, 1965, and this cause against it was transferred to Dallas County.

For background, factual details, and previous holdings, see the opinion of the court of civil appeals reversing the judgment of the trial court in favor of Custom Leasing and rendering judgment for Texas Bank and Trust Company, 470 S.W.2d 123 (1971); our opinion reversing the court of civil appeals and remanding this cause to that court for consideration of other points, 491 S.W.2d 869 (1973); and the opinion of the court of civil appeals again reversing and rendering in favor of Texas Bank and Trust, 498 S.W.2d 243.[1] We granted this application for writ of error in order to review certain holdings in the latter opinion. For the reasons hereinafter set forth, we reverse the judgment of the court of civil appeals and affirm the judgment of the trial court.

The instant case concerns only the claim of Custom Leasing against Texas Bank and Trust for recovery of money paid for the release of an alleged invalid mortgage on equipment which Custom purportedly purchased from Gentry Construction Company. It is necessary however, to summarize the related transactions and proceedings.

James E. Lyles was the son of Mrs. Gentry by a former marriage. He had served as vice-president of Gentry Construction Company several years prior to all transactions involved in this lawsuit, but he held no office in the company nor

authority to act for it during any of the transactions relevant to this lawsuit. Under false representations of his authority to act for the company, Lyles borrowed $18,900 on April 3, 1963, from the Texas Bank and Trust Company of Dallas in the name of Gentry Construction Company upon a note signed by him as purported vice-president of Gentry Construction Company and purportedly co-signed by George W. Gentry, individually. As security, Lyles gave the bank a mortgage on certain earth moving equipment signed and acknowledged only by him as purported vice-president of the company.

Thereafter, on April 23, 1964, Lyles negotiated with Custom Leasing for a purchase of this and other equipment from Gentry Construction Company for $25,000, accompanied by lease-back contracts from Custom Leasing to Gentry Construction Company. In connection with these negotiations, Lyles advised Custom that $19,089 of the agreed consideration for Custom's purchase would have to be paid to Texas Bank in order to obtain a release of its mortgage. This amount and the fact that the bank held a mortgage on the property, which would be released upon payment of the bank's sight draft for $19,089, was confirmed by the bank to Custom Leasing in a telephone call placed by Lyles to Texas Bank. Custom paid Texas Bank's sight draft in that amount upon receipt of the mortgage duly stamped and signed as released. There was no assignment of the mortgage. Custom, however, subsequently alleged that it would not have paid the bank for the release if it had not been falsely represented by the bank in the telephone call that the bank held a note secured by a mortgage on the equipment.

After Gentry Construction Company became delinquent in some of its rental payments and Custom could not obtain compliance with its lease agreements, Custom de-

---

1. See also Texas Bank and Trust Company of Dallas v. Custom Leasing, Inc., 402 S.W.2d 926 (Tex.Civ.App.1966, no writ), in which the cause against Texas Bank was transferred to Dallas County.

clared all unpaid rentals due, in the sum of $29,514.95, and filed its original suit in Lubbock County against Gentry Construction Company, George W. Gentry, Alma Gentry, and James E. Lyles, for recovery of the rentals and attorneys' fees, totaling $33,942.95, and for possession of the leased equipment.

Soon thereafter, upon taking the depositions of Mr. and Mrs. Gentry, Custom Leasing learned for the first time that the Gentrys claimed they did not sign, and that James E. Lyles had no authority to sign for the corporation, any of the bills of sale, lease-back agreements, or the note and mortgage given to Texas Bank and Trust Company.

Thereafter, Custom took an interlocutory default judgment against Lyles on March 12, 1965, for the full amount claimed. On March 29, 1965, Custom amended its petition to make Texas Bank and Trust a defendant on an alternative count of breach of warranty.

Pleas of privilege by the Gentrys and Gentry Construction Company were sustained, and Custom's cause of action against them was transferred to Midland County, where it is still pending. A plea of privilege by Texas Bank was also sustained and the cause against it was transferred to Dallas County.[2] On February 13, 1968, Texas Bank made the Gentrys and Gentry Construction Company third party defendants. It asserted that the bank is entitled to recover contribution or indemnity against them for any amount recovered against the bank by Custom Leasing, alleging that the third party defendants either authorized or ratified any and all actions of James E. Lyles in connection with the note and mortgage transaction. Upon pleas of privilege, this third party action of Texas Bank against the Gentrys and their construction company was transferred on May 20, 1969, to Midland County, where it is still pending.

In the meantime, on August 16, 1966, after Custom's suit against all other defendants had been transferred to other counties, the District Court of Lubbock County severed the cause as to Lyles and made final the interlocutory judgment previously rendered against him in favor of Custom Leasing for possession of the equipment and $33,942.95.

The instant suit by Custom Leasing against Texas Bank was tried under Custom's amended pleadings alleging that Lyles had no authority to execute the note and mortgage on behalf of Gentry Construction Company; that the bank had actual or constructive notice of such fact at the time it falsely represented to Custom that it held a valid note and mortgage on the equipment; and that Custom acted in reliance upon such false representations in paying $19,089 to the bank for the release of an invalid mortgage. Custom asserted alternative claims for money had and received (based upon failure of consideration, misrepresentation, undue advantage and unilateral mistake), mutual mistake, and fraud.

Upon jury findings, the trial court entered a judgment for Custom Leasing in the sum of $11,000. Both parties appealed, and the court of civil appeals held that the judgment of Custom Leasing against Texas Bank could not be sustained because Custom had elected an inconsistent remedy in affirming the purchase and lease contracts and suing Lyles, Gentry Construction Company, and the Gentrys for full performance thereunder. The court of civil appeals reasoned that Custom could not recover the judgment against Lyles for the amount due under the contracts, continue to pursue the same alleged joint and several obligation against the Gentrys and Gentry Construction for full recovery under the purchase and lease contracts, and at the same time recover $19,089 from the bank. 470 S.W.2d 123.

2. See case cited in footnote 1.

The opinion of the court of civil appeals was well reasoned on the general rule of election of remedies and is applicable to those remedies sought by Custom against Texas Bank, such as money had and received, failure of consideration, unilateral mistake and mutual mistake, all of which would have called for a rescission of the contracts which Custom had elected to affirm and stand upon. We recognized the general rule, 491 S.W.2d at 871–872, but held that it did not apply to Custom's cause of action against the bank in tort for alleged false representation under which it secured payment for the release of an alleged invalid chattel mortgage. This was held to be a distinct cause of action against the bank which was not inconsistent with Custom's suit against other parties for performance under their alleged contracts. As indicated, we remanded the case to the court of civil appeals for consideration of all other points, including those challenging the sufficiency of the evidence to support certain jury findings. It is the duty of the appellant courts to sustain the judgment of the trial court if it is correct on any theory of law applicable to the case. Gulf Land Co. v. Atlantic Refining Co., 134 Tex. 59, 131 S.W.2d 73, 84 (1939). The court of civil appeals recognized this duty in its latest opinion, apparently overruling Texas Bank's evidentiary points, and holding that the judgment for Custom cannot be sustained upon the jury findings and law as they relate to any of the theories contended for by Custom. We disagree with its conclusion that the findings and the law do not support the judgment for Custom based upon tortious misrepresentation on the part of the bank. The Restatement of Restitution § 8 (1957), speaks of tortious misrepresentations as follows:

"§ 8. FRAUD AND MISREPRESENTATION.

"(1) 'Fraud' in the Restatement of this Subject, unless accompanied by qualifying words, means

"(a) misrepresentation known to be such, except as stated in Subsection (3), or

"(b) concealment, or

"(c) non-disclosure, where it is not privileged, by any person intending or expecting thereby to cause a mistake by another to exist or to continue, in order to induce the latter to enter into or refrain from entering into a transaction.

"(2) A misrepresentation is material if it would be likely to affect the conduct of a reasonable man with reference to the transaction in question.

\*     \*     \*     \*     \*     \*

"b. *Misrepresentation, concealment and non-disclosure.* A representation consists of words or other conduct manifesting to another the existence of a fact, including a state of mind. It may be made directly to the other or by a manifestation to third persons intended to reach the other. A misrepresentation is a representation which, under the circumstances, amounts to an assertion not in accordance with the facts.

\*     \*     \*     \*     \*     \*

"(c) *Fraud.* A misrepresentation is fraudulent if it is made to another with knowledge that it is untrue and with the intention that the other shall act thereon. Likewise, it is fraudulent for a person with a like intention to make an untrue statement if he realizes that he does not know whether or not it is true. Concealment implies a purpose of preventing another from ascertaining pertinent facts and is fraudulent if done with the intention that another shall act thereon. Non-disclosure, when unprivileged, is also fraudulent when the facts are intentionally not revealed for the purpose of inducing action by another."

The elements of actionable fraud in Texas were stated in Wilson v. Jones, 45 S.

W.2d 572 (Tex.Comm.App.1932, holding approved), as follows:

"The authorities announce the general rule that to constitute actionable fraud it must appear: (1) That a material representation was made; (2) that it was false; (3) that, when the speaker made it, he knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by the party; (5) that the party acted in reliance upon it; and (6) that he thereby suffered injury. The gist of an action based upon fraud is found in the fraud of defendant and damage to plaintiff. Each of these elements must be established with a reasonable degree of certainty, and the absence of any one of them will prevent a recovery. 26 C.J. pp. 1062, 1063, 1064, and 1065; Wortman v. Young (Tex.Civ. App.) 221 S.W. 660." [3]

The findings of the jury are set forth in full in the opinion of the court of civil appeals. 498 S.W.2d 243. We shall refer only to those bearing upon the contentions of the parties as to whether Custom is entitled to its judgment based upon actionable false representations which led it to pay for the release of the invalid mortgage. By special issues 1 through 4 and 13, 14, and 19, it was found that Lyles had no authority to execute and deliver the note and mortgage to Texas Bank on behalf of Gentry Construction Company; that the Texas Bank vice-president represented to Custom Leasing that Gentry Construction owed the bank $19,089 pursuant to a promissory note secured by a chattel mortgage; that such representation was a material fact (defined as one relied upon to the extent that it was a material factor in inducing the making of the payment, but not necessarily the sole cause for making the payment); that such representation was false; that the bank did not believe at the time it was contacted by Custom Leasing that it had a valid promissory note from Gentry Construction Company; that at the time the bank vice-president made such representations, he knew they were false; and that these representations resulted in the actual loss of $11,000 to Custom.

■ There is some evidence to support all of these jury findings. The bank vice-president, before being contacted by Custom Leasing, had been to Midland to try to collect the note, which was long overdue. There Mrs. Gentry told him he could not see Mr. Gentry, because "you're going to cause a killing in the family." James E. Lyles confessed to him that George W. Gentry had not signed the note. He began to distrust Lyles, who begged him not to talk with Mr. Gentry. The note was not accompanied by a corporation resolution authorizing Lyles to make the loan and mortgage, although the bank official testified that he had overlooked this and did not discover it until this lawsuit arose.

■ Thus, there were specific jury findings in favor of Custom on all of the elements of actionable false representations except the undisputed fact that the representations of the bank vice-president were made with the intention that they be acted upon by Custom. No other conclusion can be reached from his admitted desire to collect the money from Custom for the release of the lien and his admission that he did not reveal any of his knowledge or doubts about the authority of Lyles, or that Lyles had admitted to him that George W. Gentry had not signed the note. Texas Bank also insists that the issue as to materiality of the representation, defined in the instructions as "one relied upon to the extent that it was a material factor in inducing the making of the payment, but not necessarily the sole cause" therefor, was insufficient as a finding that Custom acted in reliance upon the representation. We disagree, but as with intent, reliance by Custom was shown by the undisputed evi-

3. This statement was quoted with approval in the more recent case of Oilwell Division,

United States Steel Corp. v. Fryer, 493 S.W. 2d 487, 491 (Tex.1973).

dence. Facts, including intention and reliance, may be established as a matter of law where the evidence is undisputed. Miller v. Latham, 276 S.W.2d 858 (Tex. Civ.App.1954, writ ref. n. r. e.). Rule 272, Texas Rules of Civil Procedure, requires only the submission of disputed facts.

Texas Bank insists that the following additional jury findings are either conflicting or otherwise sufficient to sustain its attack upon the trial court's judgment: (5) that the vice-president's representation was not willful (defined as known to be false but not intentionally made); (17) that any loss suffered by Custom was caused in whole or in part by its lack of ordinary care in the entire transaction; and (18) that Lyles had apparent authority to act for Gentry Construction Company at the time of the execution of the mortgage on behalf of the company.

■ Whether the false representations were intentionally made is an entirely different question from whether the maker intended that they be acted upon. The distinction was made in Wilson v. Jones, *supra*, as follows:

> "The rule is further well established in this state that, where affirmative representations of fact are made and designed to be acted upon by another and he does so believing them to be true when they are false, one making the representations is liable, regardless of his knowledge of falsity or intent to deceive."

■ As to the finding in answer to special issue No. 17, without deciding whether or not it would have relieved Texas Bank of liability if it had been supported by the evidence, we have found no evidence in this record that Custom was negligent or failed to use ordinary care in its handling of this entire transaction. It was being duped by Lyles the same as Lyles had duped the bank, but the bank had obtained knowledge of Lyles's duplicitous conduct and questionable authority before Custom made its inquiry to the bank about the note

and mortgage. The record shows that Custom used every reasonable means that a prudent person would employ to see that its purchase and lease papers were in order and that it was not paying $19,089 to extinguish a worthless mortgage. Custom asked that the trial court disregard the jury's answer to this issue, and it apparently did so.

■■ Finally, the finding of "apparent authority" must have resulted solely from evidence of the representations and conduct of Lyles, which, standing alone, is legally insufficient. Apparent authority is based on estoppel, and it must arise from words or conduct of the principal. Douglass v. Panama, Inc., 504 S.W.2d 776, 778 (Tex.1974); Wewerka v. Lantrom, 174 S. W.2d 630, 633 (Tex.Civ.App.1943, writ ref.) and Bugh v. Word, 424 S.W.2d 274 (Tex.Civ.App.1968, writ ref. n. r. e.). There is no evidence in this record of any word of conduct of George W. Gentry, president, or any other officer or representative of Gentry Construction Company, which could lead anyone to believe that James E. Lyles had authority to act for the company when he executed the note and mortgage. As said by the court of civil appeals in its first opinion, ". . . the lien which Custom paid to extinguish was worthless." 470 S.W.2d at 127.

■ Custom has cross-points complaining of the jury's finding of its actual loss to be $11,000 rather than the full sum of $19,089 or an alternative sum of $15,595.29, insisting that the finding was contrary to the evidence, and further that the judgment should be for interest from the date of Custom's payment to Texas Bank rather than from the date of the judgment. The trial court apparently submitted the case on Custom's alternative claim of damages due to false representations rather than money had and received or other theories involving liquidated amounts. Custom did not object to the submission of the issue in this manner. We think the jury was entitled to consider

what Custom had received in payments from Lyles and any other relevant matters in determining the amount of Custom's actual loss resulting from the bank's representations. Under this theory of recovery, Custom's loss was not a liquidated sum, and the determination of the amount was in the province of the jury. The trial court did not err in rendering judgment for the amount of Custom's actual loss as found by the jury. For the same reason, it was proper for interest to be awarded from the date of the judgment, and we so interpret the trial court's judgment.

Accordingly the judgment of the court of civil appeals is reversed and the judgment of the trial court is affirmed.