cv4-531.kirby 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00531-CV







Jack M. Kirby, Appellant



v.



Federal Deposit Insurance Corporation, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT


NO. 449,751, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING







PER CURIAM



 Jack M. Kirby appeals from a summary judgment for over $15 million favoring the
Federal Deposit Insurance Corporation, as manager of the FSLIC Resolution Fund, in its suit to
recover amounts owed on a note. We will affirm the judgment of the trial court.



BACKGROUND


 On July 30, 1985, Millenium at Bridgepoint, a Texas general partnership, through
its general partners, James W. Anderson, Forrest N. Troutman, and Stephen C. Foley, executed
a note for $15,850,000 favoring CreditBanc. Millenium defaulted. Following the January 1988
sale at auction of Millenium's collateral for $11 million, CreditBanc sued Millenium and the three
partners for the deficiency.

 The parties changed as the lawsuit continued. The Federal Savings and Loan
Insurance Corporation as receiver replaced the insolvent CreditBanc. The FDIC in its current
capacity eventually replaced the FSLIC. In its October 1990 Second Amended Original Petition,
the FDIC omitted Troutman and Foley as defendants, suing Kirby, Anderson, and Millenium. 
Shortly thereafter, the court rendered an agreed judgment for more than $10 million against
Anderson. 

 The FDIC then moved for summary judgment against Kirby and Millenium. The
FDIC relied on affidavit and documentary proof, including a copy of the note rather than the
original. Kirby responded with his own affidavit, as well as deposition testimony of an FDIC
affiant. The trial court granted the motion, awarding the FDIC more than $15 million in
principal, interest, and attorney's fees assessed jointly and severally against Kirby and Millenium.



DISCUSSION


 Kirby raises seven points of error against the judgment. He complains that the
FDIC's summary judgment proof has technical flaws and that genuine issues of material fact exist
regarding the validity and vitality of the claims.



Technical Difficulties

 By points one, two, three, and five, Kirby contends that the documents submitted
in support of the summary judgment were inadmissible hearsay, not based on personal knowledge,
lacked technical requirements, and were not properly admissible. Kirby objected to these
deficiencies below, but the record reflects no ruling on the objections. The failure to obtain a
ruling waives the objections. Tex. R. App. P. 52(a); Roberts v. Friendswood Dev. Co., 886
S.W.2d 363, 365 (Tex. App.--Houston [1st Dist.] 1994, writ denied). We overrule points one,
two, three, and five.



Substantive Challenges

 By the remaining three points of error, Kirby contends that material fact issues
prevent summary judgment. We must review whether the movant for summary judgment has
shown the absence of genuine issues of material fact and an entitlement to judgment as a matter
of law. Nixon v. Mr Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985). In so
doing, we must take all evidence favorable to the nonmovant as true and indulge all reasonable
inferences and resolve all doubts in favor of the nonmovant. Id.

 By point four, Kirby contends that genuine issues persist regarding the FDIC's
status as the owner and holder of the note. Kirby leans heavily on the FDIC's failure to produce
the original note. We note that the FDIC may prove that it is either the owner or the holder; it
need not prove both. See Bean v. Bluebonnet Sav. Bank FSB, 884 S.W.2d 520, 522 (Tex.
App.--Dallas 1994, no writ). This distinction is crucial because the owner (who is not a holder)
of a lost instrument may recover "from any party liable thereon upon due proof of his ownership,
the facts which prevent his production of the instrument and its terms." Tex. Bus. & Com. Code
Ann. § 3.804. (1) The owner need not produce the original note to recover. See Bean, 884 S.W.2d
at 523.

 The FDIC produced an affidavit and supplemental affidavit of Roger Adams, the
FDIC account officer supervising this note. He attached to his affidavits several documents
relevant to the ownership issue. He attached a copy of the original note to CreditBanc, the
Federal Home Loan Bank Board's declaration of CreditBanc's insolvency and appointment of the
FSLIC as receiver of CreditBanc's assets, and the FSLIC-receiver's purchase and assignment
agreement conveying CreditBanc's assets to the FSLIC-corporate. He stated in his affidavit that
the assets of FSLIC-corporate were transferred under the Financial Institutions Reform, Recovery
and Enforcement Act of 1989 to the FDIC in its current status in this case. He also stated that
the "efforts to locate the original note have proven unsuccessful. The Note, however, has not
been sold, transferred, or assigned by FDIC CORPORATE to any other party."

 Kirby responded with his affidavit and excerpts from Adams's deposition. In his
affidavit, Kirby stated:



Plaintiff admits that it cannot produce the original promissory note in this case. 
I am aware of circumstances where the FDIC misplaces documents, resulting in
claims by more than one party. I am fearful that may occur in this instance. I
dispute the FDIC's claim that it is a holder of this note unless the original is
produced.



In the deposition excerpts, Adams said that he did not generate the original note, that the FDIC
had misplaced the original, and that he never saw the original. Kirby produced no evidence
indicating that the FDIC had transferred ownership to anyone else.

 The FDIC established ownership. Its proof parallels the proof held sufficient to
support summary judgment in Bean. 884 S.W.2d at 523-24. Kirby's concerns regarding the
FDIC's history of imposing double liability, while possibly legitimate, do not provide a basis to
dispute the FDIC's proof of ownership in this case. Kirby could have sought protection from such
liability. We overrule point four.

 By point seven, Kirby contends that a genuine dispute exists regarding whether he
was a partner in Millenium. The FDIC submitted a series of documents to support its contention
that Kirby was a partner in Millenium: a partnership borrowing authorization, a power of
attorney, and a partnership agreement. The borrowing authorization, executed June 23, 1985,
speaks of the "undersigned partners of Millenium," lists Kirby as a general partner along with
Foley, Troutman, and Anderson, and contains the signatures of all four partners. In the power
of attorney, signed July 23, 1985, Kirby appointed Raymond Tonjes to 



do any and every act and exercise any and every power that I might or could do
or exercise through any other person and that my said attorney shall deem proper
or advisable, intending hereby to vest in my said attorney a full power of attorney,
with full power and authority to do and perform all and every kind and character
and wherever located, to all intents and purposes as I might or could do if
personally present, hereby ratifying and confirming whatsoever my said attorney
shall do by virtue hereof, in connection with the loan made or to be made by
CreditBanc Savings Association in the original principal sum of $15,850,000.00,
including the express power and authority to execute such other documents as may
be required to effect such loan with RepublicBank Austin, including the Millenium
at Bridgepoint Partnership Agreement.



(Emphasis added.) Tonjes signed the partnership agreement on behalf of Kirby on July 30, 1985,
to be effective March 15, 1985. The other three partners signed for themselves.

 Kirby countered this summary judgment proof with his affidavit, stating, in part:



I never signed a note promising to pay this debt. I never signed a partnership
agreement. I do not recall ever signing a Partnership Borrowing Authorization
document. The power of attorney under which Mr. Tonjes appears to have signed
my name as partner was represented to me to be for an entirely different purpose. 
I never received K-1's or participated in any aspect of the partnership. I was not
a partner in Millenium at Bridgepoint.



 The FDIC carried its burden of proof to show that Kirby was a partner. The
documents show that Kirby authorized Tonjes to sign the partnership agreement on his behalf and
that Tonjes did. He does not dispute the genuineness of Tonjes's signature on the partnership
agreement. The documents also show that, before the execution of the partnership agreement,
Kirby himself signed a document as a partner authorizing the borrowing sued upon here. His
nonrecollection of signing this document does not create a fact question regarding the authenticity
of the document or his signature. The only potential question concerns the propriety of the
circumstances surrounding his signing of the power of attorney.

 Kirby's contention that he was misapprised of the purpose of the power of attorney
does not allow him to escape the summary judgment. Nonmovants must expressly present
defenses to the trial court by written motion, answer, or other response in order to have those
defenses considered on appeal. Tex. R. Civ. P. 166a(c); City of Houston v. Clear Creek Basin
Auth., 589 S.W.2d 671, 678 (Tex. 1979). Mere reference to summary judgment evidence does
not provide express presentation. McConnell v. Southside Indep. Sch. Dist., 858 S.W.2d 337,
341 (Tex. 1993). To avoid summary judgment by assertion of an affirmative defense, the
nonmovant must raise issues of fact on all its elements. Brownlee v. Brownlee, 665 S.W.2d 111,
112 (Tex. 1984). 

 Kirby's contention on appeal that he was defrauded into signing the power of
attorney fails because (1) he failed to make this claim in his answer or response to the motion for
summary judgment, and (2) his affidavit fails to raise fact issues on all the elements of fraud. 
Fraud requires proof that a person made a material misrepresentation of fact knowing the
representation was false (or being reckless with regard to its truth) and intending that the hearer
act in reliance on it. Custom Leasing, Inc. v. Texas Bank & Trust Co. of Dallas, 516 S.W.2d
138, 142-43 (Tex. 1974). The proof must also show that the hearer acted in reliance and was
thereby injured. Id. Kirby's affidavit alleges only a misrepresentation. 

 His pleadings likewise did not raise at trial the issues of mistake or accident that
he urges on appeal. We overrule point seven. 

 By point six, Kirby contends that laches bars the FDIC's claim. Laches is not
available against a governmental body for performance of a governmental function. Waller v.
Sanchez, 618 S.W.2d 407, 409 (Tex. Civ. App.--Corpus Christi 1981, no writ). That court found
that local governments were performing governmental functions when they attempted to enforce
platting and development ordinances; the court reasoned that the governmental bodies were
immune while they tried to enforce their ordinances to protect the general public. Id. 

 We have found no published cases in which Texas or United States Fifth Circuit
courts have decided whether the FDIC in its corporate capacity is performing a governmental
function when it attempts to collect a deficiency on a note that it holds. The Fifth Circuit has
decided that the government was acting in its sovereign capacity in an activity that was not purely
lawmaking and enforcement. In United States v. Popovich, the Fifth Circuit held that the
government was acting to enforce a public right or to protect the public interest when it sought
a declaratory judgment that it was entitled to a patent issued to researchers who developed a
peritoneal dialysis method while under a research contract with a government department. 820
F.2d 134, 136 (5th Cir.), cert. denied, 484 U.S. 976 (1987). A federal district court has held that
the FDIC is, as a matter of law, a United States agency. Federal Deposit Ins. Corp. v. Niblo, 821
F. Supp. 441, 451 (N.D. Tex 1993).

 Other circuits differ over whether the FDIC is exempt from equitable defenses. 
See Federal Deposit Ins. Corp. v. Hulsey, 22 F.3d 1472, 1490 (10th Cir. 1994) (holding FDIC
exempt from laches); Federal Deposit Ins. Corp. v. Roldan Fonseca, 795 F.2d 1102, 1109 (1st
Cir. 1988) (FDIC exempt from laches even though it did not sue on promissory note until five
years after purchase); but see Federal Deposit Ins. Corp. v. Harrison, 735 F.2d 408, 411-12 (11th
Cir. 1984) (FDIC's collection actions are proprietary, not governmental, and FDIC is subject to
equitable defenses such as estoppel like private parties).

 We hold that the FDIC is a governmental entity performing a governmental, not
proprietary, function when it acts as receiver for a financial institution and attempts to collect a
deficiency on a note. Amid and in the wake of the staggering losses incurred by financial
institutions in the 1980s, the FDIC was restructured and strengthened to further its purpose of
protecting depositors in those financial institutions. See 12 U.S.C.A. §§ 1811, et seq. (West
Supp. 1994). By pursuing foreclosure and deficiency actions, the FDIC tries to protect the public
from the effects of the failure of so many financial institutions. Prosecution of this action was a
governmental function.

 Because the FDIC was performing a governmental function, it was exempt from
the defense of laches. We overrule point six.


 We affirm the judgment of the trial court.


Before Chief Justice Carroll, Justices Aboussie and Kidd

Affirmed

Filed: April 19, 1995

Do Not Publish

1. This section also allows the court to require security indemnifying the defendant against
loss by reason of further claims on the instrument.