# NO. 12-14-00015-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN RE:* | § | |
| *MAX B. HANSON,* | § | *ORIGINAL PROCEEDING* |
| *RELATOR* | § | |

## *MEMORANDUM OPINION*

Max B. Hanson, Relator, requests a writ of mandamus directing the trial court to reinstate the mediated settlement agreement signed by Relator and his wife, Marie-Claude L. Hanson, and render a judgment enforcing the settlement's terms. The respondent is the Honorable Robert K. Inselmann, Jr., former Judge of the County Court at Law Number 1, Angelina County, Texas.[1] Relator raises three issues asserting that the trial court abused its discretion by voiding the parties' mediated settlement agreement because it is irrevocable and not subject to a fraud defense, Marie's fraud defense is not supported by evidence, and Marie is estopped from challenging their agreement. We conditionally grant the petition.

## BACKGROUND

The Hansons are in the process of getting a divorce. On December 13, 2012, they signed a mediated settlement agreement (MSA) pursuant to Family Code Section 6.602. They agreed on the division of their marital property and debts. Marie agreed to provide certain documents to Relator and to prepare the couple's tax returns. Relator was to pay the first $5,000.00 in taxes, and the parties were jointly responsible for taxes above $5,000.00. Relator agreed to pay Marie $62,500.00 within the following six months. In the early months of 2013, the parties' attorneys exchanged letters regarding the property division and the 2010 through 2012 taxes. Each side

---

[1] The respondent is now Judge of the 217th Judicial District Court, Angelina County. However, he has been assigned to the underlying trial court cause (No. DV-00731-12-01) by the Honorable Olen Underwood, Presiding Judge of the Second Administrative Judicial Region of Texas.

requested documentation from the other side. In July, Marie filed a motion to set aside the MSA due to Relator's alleged "willful non-disclosure, misrepresentation and fraud." By the fall of 2013, the 2011 and 2012 tax returns had still not been filed, and Relator moved for judgment enforcing the MSA and for a final decree of divorce. After an evidentiary hearing, Respondent rendered an order granting Marie's motion to set aside the MSA. Relator filed this original proceeding challenging the trial court's order.

## JURISDICTION

Marie contends that Relator's failure to timely file a request for findings of fact and conclusions of law and a notice of past due findings of fact and conclusions of law prevents consideration of his petition. Specifically, she asserts as follows:

> This Court lacks jurisdiction because Petitioner [has] failed to observe Rule 296, 297, and 306(a) of the Rules of Civil Procedure and now petition this Court for Mandamus based in no small part on the absence of Findings of Facts and Conclusions of Law which they caused. Relator's Petition for Mandamus should not be permitted when these prerequisites to appellate relief have been ignored.

Jurisdiction refers to the power of a court, under the constitution and laws, to determine the merits of an action between the parties and render judgment. ***Ysasaga v. Nationwide Mut. Ins. Co.***, 279 S.W.3d 858, 864 (Tex. App.–Dallas 2009, pet. denied). Findings of fact and conclusions of law are useful in determining the merits of the parties' claims, but their absence does not deprive this court of jurisdiction. They are not mandatory for a pretrial hearing, as no trial has occurred. *See **Surgitek, Inc. v. Adams***, 955 S.W.2d 884, 889 (Tex. App.–Corpus Christi 1997, pet. dism'd by agr.). Although Relator filed his request for findings and conclusions before the judgment was signed, it is deemed timely. TEX. R. CIV. P. 306c. The failure to file a notice of past due findings and conclusions, where applicable, results merely in the waiver of his complaint that the trial court did not file findings and conclusions. *See **Las Vegas Pecan & Cattle Co. v. Zavala Cnty.***, 682 S.W.2d 254, 255-56 (Tex. 1984). Marie's argument that this court lacks jurisdiction has no merit.

## PREREQUISITES TO MANDAMUS

Mandamus issues only to correct a clear abuse of discretion, or the violation of a duty imposed by law, where there is no adequate remedy by appeal. ***In re Daisy Mfg. Co.***, 17 S.W.3d

654, 658 (Tex. 2000) (orig. proceeding) (per curiam). The question of whether the trial court erroneously refused to render judgment on an MSA is a proper subject for mandamus. ***In re Lee***, 411 S.W.3d 445, 450 n.7 (Tex. 2013) (orig. proceeding). A failure by the trial court to properly analyze or apply the law constitutes an abuse of discretion. ***Walker v. Packer***, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). To demonstrate an abuse of discretion of a trial court's resolution of factual matters, the relator must establish that the trial court could reasonably have reached only one decision and that its finding to the contrary is arbitrary and unreasonable. ***Id***. The reviewing court may not substitute its judgment for that of the trial court. ***Id***. at 839. In other words, the appellate court defers to the trial court's factual determinations if they are supported by the evidence, but reviews the trial court's legal determinations de novo. ***In re Labatt Food Serv., L.P.***, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding). Thus, we review the trial court's determination that an MSA is or is not enforceable, which is a conclusion of law, de novo. ***Boyd v. Boyd***, 67 S.W.3d 398, 404 (Tex. App.–Fort Worth 2002, no pet.).

## THE MEDIATED SETTLEMENT AGREEMENT

In his first issue, Relator asserts that the parties signed an irrevocable MSA pursuant to Family Code Section 6.602 and therefore the trial court abused its discretion by granting Marie's motion to set it aside. In his second issue, he asserts that the MSA is not subject to a common law defense or exception for fraud or deceit, and the evidence does not establish such a defense or exception. Finally, in his third issue, he contends that Marie is estopped from challenging the MSA because she retained substantial settlement benefits.

### Section 6.602

Texas Family Code Section 6.602 governs mediated settlement agreements incident to divorce.

> (b) A mediated settlement agreement is binding on the parties if the agreement:
> (1) provides, in a prominently displayed statement that is in boldfaced type or capital letters or underlined, that the agreement is not subject to revocation;
> (2) is signed by each party to the agreement; and
> (3) is signed by the party's attorney, if any, who is present at the time the agreement is signed.
> (c) If a mediated settlement agreement meets the requirements of this Section, a party is entitled to judgment on the mediated settlement agreement notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law.

TEX. FAM. CODE ANN. § 6.602 (West 2006).

3

We review questions of statutory construction de novo. *In re Lee*, 411 S.W.3d at 450. The plain meaning of Section 6.602 is that an MSA that complies with the statute is irrevocable and a party to one is entitled to judgment based on the agreement. *Cayan v. Cayan*, 38 S.W.3d 161, 165 (Tex. App.–Houston [14th Dist.] 2000, pet. denied). If a mediated settlement agreement meets the formal statutory requirements, the trial court will not go behind the signed agreement to evaluate its merits but must render judgment on the parties' agreement. *Milner v. Milner*, 361 S.W.3d 615, 616 (Tex. 2012). Here, on its face, the parties' MSA complied with the above-stated specifications. But this is not the end of our inquiry.

### Exceptions to Section 6.602

Marie moved to set aside the MSA based on her allegations that Relator failed to disclose information pertinent to the mediation process. She accused him of concealing the existence of a fifty percent "mystery partner" in the Rising Sun Ranch asset, which was awarded to her in the MSA; concealing his 2011 income and its associated tax liability to induce her to enter an agreement to pay one-half the 2011 taxes; secretly giving community funds to their son; and secretly funneling community funds to a credit union in Canada. Marie asserts that mediated settlement agreements are contracts subject to the law of contracts and can be set aside if procured by fraud. She argues that, when a settlement agreement states that both parties have fully disclosed the marital property known to them, but one party has not disclosed substantial community assets, the agreement is not enforceable.

Essentially, Marie contends that there are exceptions to Section 6.602(c)'s directive that a party is entitled to judgment on a compliant MSA "notwithstanding Rule 11 . . . or another rule of law." Generally, the "another rule of law" language in Section 6.602(c) relates to the manner of enforcing a mediated settlement agreement. It reflects that the legislature intended to create a procedural shortcut for enforcement of mediated settlement agreements in divorce cases. *Cayan*, 38 S.W.3d at 166. Thus, parties to an MSA need not bring a separate suit for breach of contract to enforce the agreement. *Id*.

Some courts of appeals have interpreted the phrase "notwithstanding Rule 11. . . or any other rule of law" as not to "require a trial court to enforce a mediated settlement agreement simply because it complies with Section 6.602(b), irrespective of what the agreement provides for or how it was procured." *Boyd*, 67 S.W.3d at 403. These courts conclude that the statute does not require the enforcement of an MSA that is illegal in nature or procured by fraud, duress, coercion, or other dishonest means. *See Davis v. Davis*, No. 01-12-00701-CV, 2014 Tex. App. LEXIS 2591,

4

at *9 (Tex. App.–Houston [1st Dist.] March 6, 2014, no pet.) (mem. op.); *Morse v. Morse*, 349 S.W.3d 55, 56 (Tex. App.–El Paso 2010, no pet.) (same); *Spiegel v. KLRU Endowment Fund*, 228 S.W.3d 237, 242 (Tex. App.–Austin 2007, pet. denied) (holding that MSA is binding in the absence of allegations that it calls for performance of an illegal act or was procured by fraud, duress, coercion, or other dishonest means); *In re Marriage of Joyner*, 196 S.W.3d 883, 891 (Tex. App.–Texarkana 2006, pet. denied) (holding that, in the absence of allegation that the agreement was illegal, or procured by fraud, duress, or coercion, and no indication the trial court sua sponte questioned the legality of the agreement, the trial court was required to enter judgment based on the mediated agreement); *Boyd*, 67 S.W.3d at 403-05 (holding that a Section 6.602 MSA may be subject to rescission due to intentional nondisclosure); *In re Kasschau*, 11 S.W.3d 305, 312 (Tex. App.–Houston [14th Dist.] 1999, orig. proceeding) (op. on reh'g) (holding that an MSA may be set aside on the ground of illegality). "Obviously, a court cannot construe a statute or a contract to impose or enforce an illegal obligation or otherwise compel an illegal act because the purpose of the legal system is to combat unlawfulness, not promote it." *Cayan*, 38 S.W.3d at 166 n.8. A trial court has authority not to enforce illegal provisions in mediated settlement agreements. *Garcia-Udall v. Udall*, 141 S.W.3d 323, 331-32 (Tex. App.–Dallas 2004, no pet.). Based on this line of cases, we agree with Marie that an MSA procured by misrepresentation and fraud should not be enforced.

**Relator's Response**

Relator instructs us to "not be fooled by these cases," which he claims "always were wrong." Relator argues that Section 6.602 does not include an express exception for common law fraud and none should be implied. He claims that the Texas Supreme Court "openly refused to endorse the holdings of *Boyd* and *Kasschau*." The case he cites to support that claim, *Milner*, did not involve allegations of fraud or dishonesty so the court stated that it would "leave the applicability of those defenses for another case." *Milner*, 361 S.W.3d at 619. Determining that a line of cases is inapplicable to the case before it is not tantamount to refusing to endorse that line of cases.

Relator goes on to state that "the supreme court emphatically repudiated the *Boyd/Kasschau* analysis through its recent decision in *In re Lee*" and impliedly overruled those cases. He claims that *In re Lee* impliedly held that a Section 6.602 MSA "is immune to extra-statutory exceptions." He further asserts that *In re Lee* stands for the proposition that the legislature has clearly directed that the trial courts have no discretion under common law or

otherwise to deny a motion to render judgment on an MSA that meets the statutory requirements. Accordingly, Relator argues that any MSA satisfying Section 6.602's requirements is binding, irrevocable, and enforceable immediately by judgment notwithstanding Rule 11 or another rule of law, including common law fraud.

### *In re Lee*

The sole issue before the court in *In re Lee*, a dispute involving modification of a custody order, was "whether a trial court presented with a request for entry of judgment on a validly executed MSA may deny a motion to enter judgment based on a best interest [of the child] inquiry." *In re Lee*, 411 S.W.3d at 450. The court held that a trial court may not deny a motion to enter judgment under those circumstances. *Id*. at 457-58. In the process of reaching its decision, the court noted that several lower courts have addressed the issue of whether Family Code Section 153.0071, which contains the same "notwithstanding Rule 11 . . . or another rule of law" language as Section 6.602, "mandates entry of judgment on a statutorily compliant MSA under any and all circumstances, even where, for example, the agreement 'was illegal or . . . was procured by fraud, duress, coercion, or other dishonest means.'" *Id*. at 455 n.10. Without discussion, the court stated, "That issue is not presented or decided here." *Id*.

Furthermore, the concurrence in *In re Lee* explained that the contractual defense of illegality may also allow a trial court to refuse to enter judgment on an MSA, and courts may refuse to enforce contracts that are either expressly or impliedly prohibited by statute or by public policy. *Id*. at 464 n.9 (Guzman, J., concurring). This was followed by the comment that, "[t]hough we have yet to decide the issue, our courts of appeals have observed that MSAs are contracts and courts may not enforce them if they are illegal." *Id*.

Accordingly, contrary to Relator's claims, *In re Lee* did not repudiate the line of cases holding that statutorily compliant MSAs can be set aside based on illegality or fraud. When the court states that the "issue is not presented or decided here," we cannot interpret the case as having "emphatically repudiated" or "impliedly overruled" that issue. We agree with the reasoning in the line of cases holding that the trial court is not required to enforce an MSA if it was illegal or procured by fraud, duress, coercion, or other dishonest means. *See Boyd*, 67 S.W.3d at 403-05. As the Texas Supreme Court has not spoken to this issue, we are free to follow our sister courts. We note also that Relator has not mentioned an intermediate court opinion that disagrees, and none were disclosed by our research.

**Enforceability of the Hansons' MSA**

A fraud cause of action requires a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001) (orig. proceeding). When there is some evidence to support the trial court's decision, no abuse of discretion exists. *In re Epic Holdings, Inc.*, 985 S.W.2d 41, 57 (Tex. 1998). The parties presented testimony and numerous exhibits including the MSA, discovery requests, five bank statements, documentation regarding buffalo sales, letters between counsel, and emails from an accountant to Marie's counsel forwarding emails from Relator's Canadian financial representative. Thus, we review the evidence, searching for some evidence of fraud.

The record contains five 2011 bank statements in the name of Max Hanson and addressed to the couple's home in Pollok. Marie had access to these bank statements a year before the mediation. There are numerous withdrawals by wire transfer that are neither explained nor challenged. The November statement shows a wire transfer to Will Hanson/Canada in the amount of $5,050.00. Marie presented no other evidence regarding her allegations that her stepson purchased land and livestock and conducted business with community funds. The trial court's finding of fraud could not have been based on the allegations that Relator "secreted the earnings that generated the 2011 tax liability in concert with his 24 year old son Will." Relator testified that he wired $3,500.00 to credit unions in Canada to buy hay. Without more, this purchase does not rise to the level of fraud.

In a post-MSA letter, Marie's counsel requested that Relator send documentation to Marie that was necessary to prepare the 2011 returns. The record contains email correspondence dated August 2013 between Marie's CPA, Carla Morgan, and someone in Canada named Eileen Juhasz who was acting in Relator's behalf. Morgan asked for documentation for use in preparing the 2011 tax return. Juhasz stated that Marie was in violation of a court order because she had not provided all the necessary bank statements. She also explained that Relator suspects Marie was hiding cash. Juhasz proposed a "sharing of information," explaining that she would forward the requested documentation upon receiving certain documentation from Morgan. In a September 4, 2013 email, Juhasz told Morgan that Relator instructed his accountant not to allow anyone "to financially exploit his account" with the accountant's firm. Juhasz chastised Morgan for attempting to obtain information directly from the accountant and for doing so without first

7

furnishing Juhasz with Marie's documents. Juhasz also noted that past documents forwarded by Marie were never complete. Thus, there is some evidence that both sides withheld financial information after mediation. This fact cannot support a finding of a material misrepresentation prior to mediation.

In the MSA, the parties agreed that Relator would pay the first $5,000.00 in taxes and they would be jointly responsible for the remainder. Relator testified that he never knew how much money he made or how much the taxes would be. Relator testified that, on the day before the mediation, Marie told him he had grossed $850,000.00. He explained that Marie was the bookkeeper and kept track of all of the money. He claimed he had only one bank account, the one at Commercial Bank Texas, and all of the bank statements were sent to Marie. He also claimed that she had all sales receipts from his buffalo sales. Marie testified that she had some, but not all, receipts from Relator's buffalo sales. Those sales added up to almost $300,000.00. Relator's accountant testified that Relator's bank records matched with his total buffalo sales. However, Relator stated that he did most of the hay sales from 2008 through 2011, and one-third to one-half of those sales were in cash. There are no hay sale receipts in the record.

Marie testified that she did not know what the taxes would be but before mediation Relator represented to her that there was no tax liability. This was apparently based on Relator's assertion that he lost herds of buffalo that were diseased. Marie's counsel asked her, "Did you have any idea that the tax liability was $100,000, which is what he has testified to?" She responded, "No, sir." Marie testified that she was defrauded by Relator in the mediation. She stated that their tax liability has never been this big before. By letter dated March 28, 2013, Relator's counsel complained that Marie has not yet prepared the tax returns and informed opposing counsel that he anticipates that taxes will be approximately $60,000.00. He asserted that Marie would owe $27,500.00 of that amount and asked Marie to hold the funds Relator previously sent in order to cover her tax liability. Thus, Relator's testimony regarding his pre-mediation knowledge of their tax liability conflicts with Marie's testimony on that subject.

Relator testified that Marie intentionally failed to disclose assets. About two weeks after the MSA was signed, Relator's counsel wrote to Marie's counsel stating that Relator discovered seven undisclosed assets valued at above $25,000.00. Further, Relator testified that Marie never let him have access to hay sale information or the Bank of America account. He believes she is hiding money in the Bank of America account. Relator testified that Marie did not disclose how much hay she had sitting in inventory, that she hid a custom made quick attachment for the tractor,

8

and that she failed to list a four tine quick attach bale handler, a sump pump, and a six horse walker. He testified that Marie had a safety deposit box and bank accounts that he did not know about prior to mediation.

Regarding the safety deposit box, Marie explained that her mother and her husband were living in a recreational vehicle parked on her property and they did not think it was safe to leave money and jewelry there. Therefore, she obtained a safety deposit box and put it in her name because her mother is a Canadian citizen and did not have a Social Security number. She said that all of the contents of the safety deposit box belonged to her mother. She did not know how much money she took out of the box, but her mother took that money when she returned to Canada. Marie claimed to have disclosed the safety deposit box to Relator's former attorney. She also explained that, in preparation for mediation, she made a list of assets based on what she could think of offhand and that list was used at mediation. The safety deposit box and several other items were not listed among the couple's property in the MSA.

Relator testified that he found community property at their home that Marie did not include in the list of assets she provided before mediation. Further, Marie had a safety deposit box that was not accounted for at mediation. Accordingly, the trial court could have found that Marie made material misrepresentations about community assets in her control.

Pursuant to the MSA, Marie was awarded the business, identified in that document as a sole proprietorship, known as Rising Sun Ranch, including but not limited to all furniture, fixtures, machinery, equipment, inventory, cash, receivables, accounts, goods, and supplies; all personal property used in connection with the operation of the business; and all rights and privileges arising from or in connection with the operation of the business. According to Relator, Rising Sun Ranch, which he referred to as a partnership that he and Raymond Harvard owned, was created for one horse sale. Relator testified that Marie was the secretary for Rising Sun Ranch and that "Harvard got his commission and got out." Relator had been told by a lawyer that, after that one sale, "it would just die off." Relator testified that he thought Marie wanted the name "Rising Sun Ranch" and admitted that he could not give her Harvard's half. He explained that Rising Sun Ranch does not own any land or equipment. He said "[i]t is nothing. It is just a name." Relator also testified that Marie "has the DBA on Rising Sun Ranch licensed in this county."

In his letter to Marie's counsel, counsel for Relator also stated that the Rising Sun Ranch is registered to Relator and another individual and Relator would like to "maintain the name and entity." In his response, Marie's counsel questioned the comments about the Rising Sun Ranch,

9

interpreting them to mean that some third party owns half of Rising Sun Ranch, and that Relator knew this at mediation but concealed it. Marie testified that she did the "horse sale catalog" for Rising Sun Ranch in 2007 but has never done a tax return or any bookkeeping for Rising Sun Ranch. She calls the twenty-five acre property in Pollok, which was awarded to her, the Rising Sun Ranch. She thought she was getting everything at the ranch except what Relator was awarded under the MSA.

Based on the wording of the MSA, Marie thought she was awarded a sole proprietorship known as Rising Sun Ranch. Relator's post-MSA declaration that Rising Sun Ranch is registered to him and another individual, and that he would like to maintain the name and entity, is at odds with the MSA. It also conflicts with Relator's testimony that "it is just a name." Further, the record contains an invoice for buffalo to be shipped to "Max Hanson/Rising Sun Ranch" and a rescission of a contract naming "Max Hanson DBA Rising Sun Ranch" as a party, both dated in 2011. Apparently, the name was used in connection with business other than the one horse sale. The record shows that Marie knew about the horse sale Relator referred to and the name Rising Sun Ranch, but there is no indication she knew what type of entity it was, or what role the other individual played. Relator testified that Marie owns the name Rising Sun Ranch. His testimony does not clarify the status of the business known as Rising Sun Ranch, half of which is owned by Harvard.

The evidence supports a finding that Relator made a material misrepresentation about the ownership of Rising Sun Ranch. There is conflicting evidence as to what Relator knew and said prior to mediation about the parties' 2011 income tax liability. Additionally, there is some evidence that Marie failed to disclose assets whose value was high enough for the failure to disclose to be considered a material misrepresentation. Accordingly, there is evidence to support the trial court's finding that material misrepresentations were made. However, the record is silent as to whether either party relied on the other's misrepresentations when deciding to sign the MSA. The failure to prove just one element of fraud is fatal to Marie's cause of action, and we need not discuss the remaining elements. *See Custom Leasing, Inc. v. Tex. Bank & Trust Co. of Dallas*, 516 S.W.2d 138, 143 (Tex. 1974). Accordingly, the trial court could reasonably have reached only the decision that Marie did not prove her fraud allegations. The trial court's decision to the contrary was an abuse of discretion. *See Walker*, 827 S.W.2d at 840.

10

Because compliance with Family Code Section 6.602 does not mandate entry of judgment on an MSA under any and all circumstances, we overrule Relator's first issue and his second issue to the extent he contends that the MSA is not subject to the common law defense of fraud. However, because the record does not support a finding of all elements of a fraud cause of action, the trial court could not reasonably have granted Marie's motion to set aside the MSA for fraud. We sustain Relator's second issue to the extent it complains of the state of the record evidence in support of the motion. Due to our disposition of Relator's second issue, we need not consider his third issue. TEX. R. APP. P. 47.1.

Having concluded that the trial court abused its discretion when it granted Marie's motion to set aside the parties' MSA and that mandamus relief is available to correct the trial court's action, we *conditionally grant mandamus* relief. We trust the trial court will promptly vacate its order of November 13, 2013 setting aside the Hansons' MSA and render judgment on the MSA pursuant to Family Code Section 6.602. The writ will issue only if the trial court fails to comply with the court's opinion and order *within ten (10) days after the date of the opinion and order*. The trial court shall furnish this court, within the time for compliance with the court's opinion and order, a certified copy of its order evidencing such compliance.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered February 27, 2015.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# <u>ORDER</u>

FEBRUARY 27, 2015

NO. 12-14-00015-CV

**MAX B. HANSON,**
Relator
v.
**HON. ROBERT K. INSELMANN, JR.**
Respondent

## ORIGINAL PROCEEDING

ON THIS DAY came to be heard the petition for writ of mandamus filed by **MAX B. HANSON**, who is the relator in Cause No. DV-00731-12-01, pending on the docket of the County Court at Law No. 1 of Angelina County, Texas. Said petition for writ of mandamus having been filed herein on January 15, 2014, and the same having been duly considered, because it is the opinion of this Court that the petition is meritorious, it is therefore CONSIDERED, ADJUDGED and ORDERED that the said petition for writ of mandamus be, and the same is, hereby **conditionally granted**.

And because it is further the opinion of this Court that the trial judge will act promptly and vacate its order of November 13, 2013, setting aside the mediated settlement agreement between Max B. Hanson and Marie-Claude L. Hanson and render judgment on the mediated settlement agreement, the writ will not issue unless the Honorable Robert K. Inselmann, Jr., Judge of the 217th Judicial District Court of Angelina County, Texas, sitting by assignment in trial court cause number DV-00731-01, fails to comply with this Court's order within ten (10) days from the date of this order.

It is further ORDERED that **MARIE-CLAUDE L. HANSON** pay all costs incurred by reason of this proceeding.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*