ARANSAS PROPERTIES, INC., Appellant,

v.

R. D. BRASHEAR et al., Appellees.

No. 253.

Court of Civil Appeals of Texas.

Corpus Christi.

Jan. 26, 1967.

Rehearing Denied Feb. 16, 1967.

Bond Davis, San Antonio, for appellant.

Luther E. Jones, Jr., Corpus Christi, for appellees.

## OPINION

SHARPE, Justice.

This appeal is from a judgment rendered in a non-jury trial that appellant Aransas Properties, Inc., plaintiff below, take nothing by its suit against R. D. Brashear and R. L. Irwin, appellees, defendants below.

Appellant in its original brief urged fifteen points of error, but by motion and supplemental brief withdrew point one and added a point denominated "Fifth Point A". Appellees have replied with a single counterpoint asserting that appellant failed to establish by trial court finding or conclusive evidence the essential elements of

any theory of recovery asserted by it. Appellees' counterpoint is briefed in appropriate subdivisions applicable to each theory of recovery relied on by appellant.

We agree with appellees and affirm the judgment.

Appellant alleged that it had theretofore executed two deeds to appellee Brashear covering certain property in Aransas County, Texas, situated generally north of Rockport, Texas and lying between State Highway 35 and the intracoastal canal to the east thereof (where it runs through Aransas Bay). The first instrument was a special warranty deed dated April 14, 1961, and the second was a quitclaim deed dated January 26, 1962. Appellant further alleged that the special warranty deed was executed in accordance with a map made by Brashear as a surveyor and civil engineer employed by appellant, which was drawn on March 23, 1960 and certified to by Brashear and two other persons on April 12, 1960; and that Brashear had designated the property to be conveyed on said map. Appellant sought judgment confining the area covered by the special warranty deed to such designation, and alleged that Brashear was estopped to claim that the deed covered any land in addition to that so specifically designated by him on the map. Appellant also sought to cancel the subsequent quitclaim deed on the ground of fraud, and to cancel a later partition deed by and between appellees Brashear and Irwin on the ground that none of the land covered by it or the plat attached thereto was included in the tract conveyed to Brashear by appellant, and that the partition deed constituted a cloud on appellant's title to land owned by it.

After entry of the take-nothing judgment, the trial court made findings of fact and conclusions of law as follows:

"1. Plaintiff executed and delivered to defendant Brashear the special warranty deed dated April 24, 1961 which is in evidence as Plaintiff's Exhibit No. 4. The action of plaintiff in so doing was an integral part of an overall transaction in which there was an exchange of conveyances between plaintiff and defendant Brashear. Plaintiff, as its part of such exchange, received a conveyance from defendant Brashear conveying to plaintiff valuable land owned by defendant Brashear. Defendant Brashear, as his part of such exchange, received the said special warranty deed. The negotiations between the parties incident to such transaction were conducted at arm's length and there was no fiduciary or confidential relation between defendant Brashear and plaintiff or any of its officers at any time during such negotiations or at the time of the execution by plaintiff of said deed.

"2. Plaintiff executed and delivered to defendant Brashear the quitclaim deed dated January 26, 1962 which is in evidence as Plaintiff's Exhibit No. 6. Plaintiff did this in consideration of defendant Brashear's forebearance from filing a title suit against plaintiff. The negotiations between the parties incident to such quitclaim were conducted at arm's length and there was no fiduciary or confidential relation between defendant Brashear and plaintiff or any of its officers at any time during such negotiations or at the time of the execution by plaintiff of said quitclaim deed.

"3. The northeast corner of Lot 1, Block 245 of Burton and Danforth Subdivision in Aransas County, Texas (i. e. the northeast corner of said Subdivision) as shown on map of said Subdivision prepared by T. L. Telford dated December 9, 1909 (such map being hereafter referred to as the Telford map and copy of such map being in evidence as Defendants' Exhibit No. 1) and the northeast corner of said Subdivision as shown on said quitclaim deed are both located on the ground at the same point.

"4. The tract described in said quitclaim deed is located on the ground as shown in Defendants' Exhibit No. 2.

"5. The tract described in said special warranty deed is identical with the tract described in said quitclaim deed, subject to this qualification, that the centerline of Ocean Drive is used as a boundary in said special warranty deed, whereas the east line of said Ocean Drive is used as a boundary in the said quitclaim deed.

"6. Defendant Brashear sold to plaintiff the map dated April 12, 1960 which is in evidence as Plaintiff's Exhibit No. 1 (such map being hereafter referred to as the Brashear map). At the time of such sale defendant Brashear made to the plaintiff and its officers the representations contained in the Certificate on such map. There was no reliance by plaintiff or its officers on such representations at time of, or during negotiations incident to, execution of said special warranty deed or said quitclaim deed in so far as such representations were germane to the matter of the location on the ground of the northeast corner of Lot 1, Block 245 of Burton and Danforth Subdivision in Aransas County, Texas, or in so far as such representations were germane to the matter of the location of the ground of Ocean Drive, or in so far as such representations were germane to the matter of the location on the ground of the intersection of Ocean Drive and the Intracoastal Canal. The reason for this lack of reliance was that before commencement of the negotiations which resulted in execution of said special warranty deed plaintiff and its officers were advised by defendant Brashear of inaccuracies in said Brashear map disclosed by survey work done by him on the ground after sale of such map. With respect to the matter of the location on the ground of said corner and the matter of the location on the ground of said Ocean Drive the parties to said deeds, at the time of execution of said deeds, relied on the said Telford map rather than the said Brashear map.

"7. Neither at the time of, or during negotiations incident to, execution of said deeds or either of them was there made by defendant Brashear or relied on by plaintiff or any of its officers any false or misleading representation of any kind with reference to the matter of the location on the ground of the land described in such deeds.

"8. Premises considered, it is the conclusion of the Court that plaintiff did not legally establish any ground of recovery or cause of action entitling plaintiff to recover and that, accordingly, defendants were entitled to entry of the take nothing judgment heretofore entered by the Court in this cause."

Appellant's contentions may be divided into two groups. The first consists of Points 8, 9, 10 and 11, by which appellant contends that the trial court erred in its conclusion of law that appellant did not establish any ground of recovery, in denying recovery restricting the land conveyed under the special warranty deed on the basis of estoppel, in refusing to cancel the quitclaim deed because of Brashear's alleged fraud, and in refusing to cancel the partition deed between appellees in order to remove an alleged cloud from appellant's title. The second group of points consists of appellant's points 2–7 and 12–14 by which appellant contends that the evidence is legally and factually insufficient to support certain findings of the trial court particularly the following: findings 1 and 2 (last sentence), 5, 6, (3rd, 4th & 5th sentences), and 7.

We have reviewed the entire record in the light of appellant's contentions and have concluded that the evidence is legally and factually sufficient to support the findings of fact made by the trial court. See Garza v. Alviar, 395 S.W.2d 821 (Tex.Sup.1965). The evidence consisted of the testimony of five witnesses and a number of documents. The two principal witnesses were Mr. H. H. Dewar, vice-president of appellant corporation who handled the transactions in question for it, and R. D. Brashear, the only witness for appellees. Two of appellant's witnesses were of counsel for it in this case,

and one of them represented the corporation as its attorney in connection with the two deeds executed by it to Brashear. The fifth witness was a real estate appraiser who testified as to values. Conflicts in the testimony were largely resolved by the trial judge in favor of appellees.

The descriptions in the two deeds are as follows:

(a) Special warranty deed.

"Beginning at the northeast corner of Lot one (1), Block two hundred forty-five (245), Burton & Danforth Subdivision prepared by P. L. Telford, December 9, 1909, recorded in Vol. 1, pages 62 and 63, Map and Plat Records of Aransas County, Texas;

"Thence north 83° 52' east with the north boundary line of the Aransas Properties land along a fence line to the west boundary line of the Intracoastal Canal;

"Thence in a southwesterly direction with the west boundary line of Intracoastal Canal to a point where said west line crosses the centerline of Ocean Drive, an 80 ft. dedicated road;

"Thence in a northeasterly direction with the centerline of said Ocean Drive to the point of beginning, containing 22 acres, more or less."

(b) Quitclaim deed.

"Starting at a point in the centerline of the Texas and New Orleans Railroad tracks, said point being in the easterly projection of the fence line which is the north boundary line of a 15 acre tract of land in the name of Ziba G. Ward as shown by a plat prepared by J. D. Wheeler and recorded in the map records of Aransas County, Texas in Vol. 1 at page 24,

"Thence in an easterly direction 803.47 ft. with the easterly projection of said north line and said fence, said projection being along the north line of the Burton and Danforth Subdivision as shown by map prepared by P. L. Telford, dated December 10, 1909 and recorded in Vol. 1 at pages 62 and 63 of the map records of Aransas County, Texas,

"Thence south 70 deg. 15 min. east along an old fence line marking the boundary line of said Burton and Danforth Subdivision 545 ft. to a corner of said Burton and Danforth Subdivision and the point of beginning of the tract herein described, which point of beginning is at the intersection point of the east boundary of Ocean Drive and the north line of a 40 ft. roadway on the north side of said Burton and Danforth Subdivision,

"Thence north 87 deg. 17 min. east along a fence line to the west boundary of the intracoastal canal for the northeast corner of this tract,

"Thence in a southwesterly direction along the west boundary of said intracoastal canal to a point where said west boundary of said canal crosses the east line of Ocean Drive an 80 ft. roadway as shown by map of said Burton and Danforth Subdivision for the most southerly corner of this tract,

"Thence along the east boundary line of said Ocean Drive to the point of beginning."

The principal difference in the descriptions used in the two deeds is that in the special warranty deed the center line of Ocean Drive is used as a boundary, whereas in the quitclaim deed the east line of Ocean Drive is used. The trial court found that the tract described in the special warranty deed was identical with that described in the quitclaim deed subject to that qualification, and that the tract described in the quitclaim deed is located on the ground as shown in Defendants' Exhibit No. 2. For convenience we will sometimes refer to that tract as the "D-2 Tract". Appellee Brashear gave testimony showing that the description contained in the quitclaim deed when applied to the ground covers the D-2 Tract. That testimony was not contradicted

by appellant and was accepted by the trial judge as fixing the actual location on the ground of the property conveyed by appellant to appellee Brashear. We regard the difference in the description contained in the two deeds concerning Ocean Drive as immaterial to disposition of the case. Appellant offered in evidence an exhibit marked Plaintiff's Exhibit No. 1 which was a map originally drawn by Brashear in 1960 with indication thereon of a triangular tract which is smaller than the D-2 tract, and which appellant contends was the tract to be conveyed by its special warranty deed of April 14, 1961. This tract will sometimes be referred to as the "P-1 Tract". The evidence in the trial court did not show the respective acreages actually contained in either the P-1 or D-2 tracts, but the special warranty deed recited the acreage as "22 acres, more or less".

Appellant's basic contention is that the tract conveyed by the special warranty deed should be judicially restricted so as to leave it no larger than the P-1 tract, and that appellees are estopped from asserting that the special warranty deed covers more land than that contained in the P-1 tract. If this theory should be sustained, appellant would be entitled to judgment for title to all portions of the D-2 tract which are additional to the land contained in the P-1 tract.

Although appellant takes the position that its suit is one to construe the special warranty deed, it is apparent that ultimately appellant must rely upon its theory of estoppel as it relates to that deed. Appellees correctly contend that appellant did not establish by court findings nor by conclusive evidence the essential elements of its estoppel theory of recovery.

An essential element of the estoppel theory of recovery was that at the time of the execution of the special warranty deed, appellant relied on false representations made by Brashear to appellant's prejudice. Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929, 932 (1952); Fitch v. Lomax, Tex.Com.App., 16 S.W.2d 530, 66 A.L.R. 758 (1929); 22 Tex.Jur.2d, Estoppel, Sec. 16, pages 683–684. This rule is particularly applicable to the representations concerning accuracy of the 1960 map Brashear sold to appellant and concerning the location on the ground of the northeast corner of Lot 1, Block 245 of the Burton & Danforth Subdivision in Aransas County, Texas, and the location on the ground of Ocean Drive or its intersection with the Intracoastal Canal. The trial court expressly found that there was no such reliance by appellant; that appellant and its officers had been advised by Brashear of inaccuracies in the 1960 map before the 1961 negotiations in question; and that concerning the location on the ground of the corner mentioned and of Ocean Drive the parties relied on another map, known as the Telford Map. In part, such findings are supported by the testimony of Brashear that after the 1960 map was made he discovered errors in it as a result of field work done by him, and that he discussed such errors with appellant's vice president and its attorney, and his 1960 map was not actually used in working out the description finally used in the special warranty deed. The trial court findings are further supported by the fact that there is no mention in the special warranty deed of the Brashear map, but instead reference is made to the Telford map; by the inability of either appellant's vice president or its attorney who handled the transaction to furnish any reason for using the Telford map instead of the Brashear map; and by the circumstance that the Brashear map disclosed a gap in Ocean Drive which could not have been relied on and produce the description actually used in the special warranty deed. Appellant's vice-president and its attorney each testified they relied on Brashear's representations in connection with drafting the special warranty deed. However, to the extent conflicts were presented, their resolution was peculiarly within the province of the trial court as the fact finder, and on the record presented we are bound by such findings. This is also true of the finding that there

was no fiduciary or confidential relationship between appellant and Brashear at the time of the negotiations and execution of the deeds in question. For the reasons stated, appellant is not entitled to reversal on account of the failure of the trial court to sustain its theory of recovery based upon *estoppel because of representations allegedly made by Brashear and appellant's reliance thereon.*

Appellant's second theory of recovery sought cancellation of the quitclaim deed dated January 26, 1962 from appellant to appellee Brashear. Appellant's basic position here is that it relied upon the representation of Brashear that the only purpose of the quitclaim deed was to cover a strip of land which Brashear claimed to exist at the north end of the property conveyed by the special warranty deed, that is, any strip which might lie between the north boundary of Lot 1, Block 245, Burton & Danforth Subdivision as shown on the Brashear map and the remains of an old fence, and that it did not extend the tract further south than that conveyed by the special warranty deed, as that tract was shown on the Brashear map. Appellant alleged that when it executed the quitclaim deed it was still relying on the correctness of that map and the prior representations as to its correctness as made by Brashear and also relying on a letter from Brashear dated January 22, 1962 which requested execution by appellant of the quitclaim deed. However, appellant also alleges and concedes that prior to said letter, Brashear had advised Mr. Dewar, appellant's vice-president, that there was a divergence of opinion and conflicting claims as to whether the north line of Lot 1, Block 245, purporting to be the north line of the Burton & Danforth Subdivision, was located as shown on the Brashear map or whether it extended to an old fence line farther north; that Brashear took the latter position and requested the quitclaim deed so as to place him in position to assert claim to the additional strip, if any; that Dewar on behalf of appellant advised Brashear he did not want to participate in such controversy and that the quitclaim would be executed.

■■ Mr. Dewar testified in substance that Brashear represented that the quitclaim deed would cover only the small strip above-mentioned at the north end of the tract and he executed it with that understanding or condition. Brashear testified that his only purpose in securing the quitclaim deed was to fix the special warranty deed he had to a known point on the ground; that there were no discussions as to how far south the boundary would extend; that the two deeds describe the same tract of land, with the immaterial difference concerning the center line and east line of Ocean Drive, when the point which is the northeast corner of the Burton & Danforth Subdivision is fixed on the ground as shown by the Telford map; that he mentioned the possibility of a law suit against appellant to Dewar whose reaction was that "he didn't want to be sued or have anything to do with any controversy there and he would give me a quitclaim." The trial judge accepted Brashear's version of what took place in connection with execution of the quitclaim deed, and his findings in connection with the same are legally and factually supported by the evidence. Appellant, therefore, cannot recover on its theory of representations allegedly made by Brashear or reliance thereon, in order to cancel the quitclaim deed.

■ It also appears that appellant failed to establish injury by reason of execution of the quitclaim deed. Under trial court findings, that deed had the effect of confirming the title to property which had been previously conveyed by the special warranty deed. Absent such showing of injury, appellant is precluded from recovery in any event in connection with the quitclaim deed. See Russell v. Industrial Transp. Co., 113 Tex. 441, 258 S.W. 462 (1924); Moore v. Cross, 87 Tex. 557, 29 S.W. 1051, 1053 (1895).

Appellant's third theory of recovery sought cancellation of a partition deed executed by appellees Brashear and Irwin in connection with the southern portion of the D-2 tract. Generally, the tract partitioned is that which is not included in the P-1 tract. In order to recover on its third theory, it was essential for appellant to establish that it was the owner of the tract partitioned. Appellant failed to carry its burden in such respect because title to such partitioned tract had theretofore passed from appellant to appellee Brashear. That tract was included in the description of both the special warranty and quitclaim deeds. Appellant's failure to secure a restriction of the property conveyed by the special warranty deed and to secure cancellation of the quitclaim deed precludes the relief sought for cancellation of the partition deed between appellees.

The judgment of the trial court is affirmed.