Opinion issued June 15, 2006 











In The
Court of Appeals
For The
First District of Texas




NO. 01-05-00445-CV




CLEVELAND JOHNSON, Appellant

V.

CHARLIE WILLIAMS, Appellee




On Appeal from the 268th District Court
Fort Bend County, Texas
Trial Court Cause No. 04-CV-136678




MEMORANDUM OPINION

          Appellant, Cleveland Johnson, appeals from a no-evidence summary judgment
rendered in favor of appellee, Charlie Williams. Johnson’s suit sought to quiet title
and alleged causes of action for fraud and breach of fiduciary duty. Johnson also
petitioned for declaratory relief. In two issues on appeal, Johnson contends that the
trial court erred by: (1) granting Williams’ no-evidence motion for summary
judgment despite Johnson’s bringing forth more than a scintilla of probative evidence
on each of his causes of action and (2) declining to consider Johnson’s request for
declaratory relief. 
          We reverse and remand the cause. 
BACKGROUND
          In 1998, Johnson acquired a home in Missouri City, Texas. Through his
purchase of the home, Johnson became a mortgagor owing monthly payments to
Midland Mortgage. In the summer of 2002, Johnson fell behind in his mortgage
payments, and Midland Mortgage posted his home for foreclosure sale. 
Subsequently, Johnson was contacted by various individuals, including Pamela
Bolton, who represented that they could aid Johnson in preventing the foreclosure
sale of his home. Bolton met with Johnson in late August to discuss the pending
foreclosure sale of Johnson’s home. On or about August 28, 2002, Bolton presented
a sales contract to Johnson whereby Bolton would acquire Johnson’s home in
exchange for a payment of $15,000. Johnson claims that Bolton told him he would
be able to regain the home if he made monthly payments to her for one year. He
requested three days to consider the terms of Bolton’s offer and contacted Williams,
an attorney he knew socially, for assistance in reviewing the contract. Williams
agreed to assist Johnson, and the two met at Williams’ law office on or about August
28, 2002 to discuss Bolton’s offer. 
          Johnson and Williams present divergent versions of what transpired at their
meeting. Williams, who contends that the meeting occurred on or about August 28,
avers that Johnson explained to him that Bolton’s offer was unduly stringent. 
Johnson, according to Williams, stated that he would lose his home if he agreed to
Bolton’s proposal; rejecting her proposal, however, would result in a foreclosure sale. 
Williams contends that after Johnson explained his predicament, Johnson proposed
an alternative—he would sell his home to Williams if Williams would allow him to
continue living in the home for $500 a month in rent. Williams agreed to Johnson’s
offer, and Johnson signed a warranty deed—which, according to Williams, occurred
the day after he and Johnson initially met—conveying the property to Williams for
“ten dollars and other good and valuable consideration.” After the deed was signed,
Williams: (1) sent Midland Mortgage an escrow funds check in the amount of
$11,252.01; (2) paid Midland $795.00 in attorneys’ fees; (3) paid $3,100 in
delinquent homeowner’s association dues; and (4) agreed to let Johnson continue
living in the home for a monthly rent of $500. Williams denies that he entered into
an attorney-client relationship with Johnson before their meeting, at the meeting, or
anytime thereafter. 
          Johnson’s recounting of the meeting conflicts sharply with Williams’ version. 
According to an affidavit offered by Johnson in response to Williams’ no-evidence
motion for summary judgment, when Johnson entered Williams’ office, Williams was
on the telephone with Midland Mortgage discussing the pending foreclosure of
Johnson’s home. The representative from Midland asked to speak with Johnson in
order to confirm that Williams was his attorney. Johnson took the telephone and
informed the representative that Williams was representing him in the foreclosure
matter. While Johnson was on the telephone, Williams presented him with some
unidentified papers, which Johnson signed. After the telephone call was completed,
Williams briefly reviewed Bolton’s offer and told Johnson that he would lose his
house forever if he signed the contract. Williams then represented that he could stop
Midland from foreclosing and enable Johnson to keep his home in exchange for a fee. 
Despite an inquiry from Johnson, Williams refused to say what his fee would be,
although he did suggest that it would be relatively modest. 
          Subsequently, Williams refused to provide Johnson with any documentation
regarding the amount of money Williams paid to Midland or to enter into a written
agreement with Johnson detailing how Johnson was to repay Williams for any
payments Williams made on his behalf. According to Johnson, Williams informed
him that documentation was not needed and indicated that Johnson should simply
trust him. Williams further informed Johnson that he should not discuss the matter
with anyone else. Johnson then wrote Williams a check for $1,500, which Johnson
believed to be the first step toward repaying Williams for the money Williams loaned
him in order to prevent the foreclosure. Johnson subsequently made eight monthly
payments of $500 to Williams, payments he also describes as “repayments of the
loan” he received from Williams. Johnson maintains that he never intended to convey
his property to Williams, and he contends that an attorney-client relationship existed
between Williams and himself. Johnson further maintains that the only papers he
signed were those Williams placed before him during his visit to Williams’ office. 
He contends that his meeting with Williams occurred on August 29 and that he did
not return the following day for the purpose of signing the warranty deed. The deed
was acknowledged on August 29. 
          On July 3, 2003, Williams sent Johnson a letter indicating that he would need
to take possession of the house due to unpaid property taxes and homeowner’s
association dues. Williams sent Johnson another letter eight days later stating, “I
need possession of the premises on or before August 15, 2003.” A third letter, sent
on August 13, stated that the Fort Bend county tax assessor was threatening to
foreclose on the property. The letter added, “I don’t see how you expect to live there
free and I pay all the bills. You promised to pay me $500 per month, but the last
payment from you was in April 2003.” 
          On March 4, 2004, Williams filed a forcible entry and detainer suit seeking to
take possession of the premises. After a hearing, a judgment for possession was
rendered in Williams’ favor. Johnson then filed an in forma pauperis appeal, and, on
June 11, 2004, brought suit against Williams seeking to quiet title and obtain
declaratory relief, and alleging fraud and breach of fiduciary duty.


 Williams moved
for a no-evidence summary judgment on December 8, 2004, and Johnson responded
on December 21, 2004. Johnson’s response included his own affidavit describing his
meetings with Bolton and Williams and a letter sent by Williams to Midland
Mortgage stating, “I have been retained to represent Mr. Johnson in the foreclosure
sale of his property.” Williams’ no-evidence summary judgment was granted on
January 14, 2005. After his motion for new trial was denied, Johnson timely filed his
notice of appeal. DISCUSSION
          Standard of Review
          A no-evidence summary judgment is essentially a directed verdict granted
before trial, to which we apply a legal-sufficiency standard of review. King Ranch,
Inc. v. Chapman, 118 S.W.3d 742, 750–51 (Tex. 2003); Jackson v. Fiesta Mart, Inc.,
979 S.W.2d 68, 70 (Tex. App.—Austin 1998, no pet.). In general, a party seeking a
no-evidence summary judgment must assert that no evidence exists as to one or more
of the essential elements of the nonmovant’s claims on which it would have the
burden of proof at trial. Holmstrom v. Lee, 26 S.W.3d 526, 530 (Tex. App.—Austin
2000, no pet.). Once the movant specifies the elements on which there is no
evidence, the burden shifts to the nonmovant to raise a fact issue on the challenged
elements. Tex. R. Civ. P. 166a(i). “A no-evidence summary judgment will be
sustained when (a) there is a complete absence of evidence of a vital fact, (b) the
court is barred by rules of law or of evidence from giving weight to the only evidence
offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more
than a scintilla, or (d) the evidence conclusively establishes the opposite of a vital
fact.” King Ranch, 118 S.W.3d at 751 (quoting Merrell Dow Pharms., Inc. v.
Havner, 953 S.W.2d 706, 711 (Tex. 1997)) We view the evidence in the light most
favorable to the non-movant, disregarding all contrary evidence and inferences. Id.
(citing Merrell Dow Pharms., 953 S.W.2d at 711).
          A no-evidence summary judgment is improperly granted if the respondent
brings forth more than a scintilla of probative evidence to raise a genuine issue of
material fact. King Ranch, 118 S.W.3d at 751. When the evidence supporting a
finding rises to a level that would enable reasonable, fair-minded persons to differ in
their conclusions, more than a scintilla of evidence exists. See Merrell Dow Pharms.,
953 S.W.2d at 711. A defendant who moves for summary judgment need negate only
one element of the plaintiff’s cause of action. See Gibbs v. General Motors Corp.,
450 S.W.2d 827, 828 (Tex. 1970).
Do Genuine Issues of Material Fact Exist Regarding Johnson’s Suit to Quiet
Title and Claims for Fraud and Breach of Fiduciary Duty?

          In his first issue on appeal, Johnson contends that the trial court erred in
granting Williams’ no-evidence motion for summary judgment because genuine
issues of material fact exist regarding his causes of action. In support of his position,
Johnson cites his sworn affidavit describing his meetings with Bolton and Williams. 
          To constitute valid summary judgment evidence, an affidavit must do more
than offer mere legal conclusions or subjective opinions. See Randall v. Dallas
Power & Light Co., 752 S.W.2d 4, 5 (Tex. 1988); Brownlee v. Brownlee, 665 S.W.2d
111, 112 (Tex. 1984). An affidavit avoids being conclusory when it provides a
factual bases for its underlying legal conclusions. See Rizkallah v. Conner, 952
S.W.2d 580, 587 (Tex. App.—Houston [1st Dist.] 1997, no writ). Here, as a
preliminary matter, we note that Johnson’s affidavit does not offer mere legal
conclusions or subjective opinions. Rather it provides a description of the facts
surrounding his meetings with Bolton and Williams. 
1. Suit to Quiet Title
          In his first cause of action, Johnson sought to quiet title to the property in
question. “The principal issue in a suit to quiet title is as to the existence of a cloud 
[on the title] that equity will remove.” Bell v. Ott, 606 S.W.2d 942, 952 (Tex. Civ.
App.—Waco 1980, writ ref’d n.r.e.); see also Wright v. Matthews, 26 S.W.3d 575,
578 (Tex. App.—Beaumont 2000, pet. denied). A suit to quiet title “‘enable[s] the
holder of the feeblest equity right to remove from his way to legal title any unlawful
hindrance having the appearance of a better right’” to the property. Bell, 606 S.W.2d
at 952 (quoting Thompson v. Locke, 66 Tex. 383, 1 S.W. 112, 115 (Tex. 1886)). In
a suit to quiet title, the plaintiff must show ownership of the disputed property and
that the alleged adverse claim is a cloud on the title that equity will remove. See
Fricks v. Hancock, 45 S.W.3d 322, 327 (Tex. App.—Corpus Christi 2001, no pet.);
Aransas Props., Inc. v. Brashear, 410 S.W.2d 934, 940 (Tex. Civ. App.—Corpus
Christi 1967, writ ref’d n.r.e.). “Any deed, contract, judgment or other instrument not
void on its face that purports to convey an interest in or make any charge upon the
land of a true owner, the invalidity of which would require proof, is a cloud upon the
legal title of the owner.” Best Inv. Co. v. Parkhill, 429 S.W.2d 531, 534 (Tex. Civ.
App.—Corpus Christi 1968, writ dism’d w.o.j.).
          In his no-evidence motion for summary judgment, Williams contended that
Johnson had produced no evidence of a cloud on his purported title to the property 
that equity would remove. We disagree. In his affidavit, Johnson states that (1) he
purchased the property in question in 1988


 and (2) he never intended to transfer title
to Williams. Conversely, Williams proffers the general warranty deed he claims was
executed on or about August 29 as proof that he holds a fee simple interest in the
property. The general warranty deed serving as the basis of Williams’ claim is not
void on its face and purports to convey an interest in the property to Williams. See
Parkhill, 429 S.W.2d at 534. The existence of Williams’ deed, competing with
Johnson’s, provides more than a scintilla of evidence that a cloud exists on Johnson’s
claim to title. 
          Typically, a signed and acknowledged deed creates a presumption that “the
grantor intended to convey the land according to the terms of the deed.” Thornton
v. Rains, 299 S.W.2d 287, 288 (Tex. 1957). This presumption may be rebutted,
however, by contrary evidence showing “fraud, accident, or mistake.” Id. Notably, 
“[t]he question of whether an instrument written as a deed is actually a deed or is in
fact a mortgage is a question of fact.” Johnson v. Cherry, 726 S.W.2d 4, 6 (Tex.
1987). Here, Johnson maintains in his affidavit that (1) Williams represented to him
that he would be able to keep his home, (2) he believed that Williams was loaning
him money to prevent foreclosure by Midland, and (3) he never intended to convey 
his home to Williams by general warranty deed. Such facts, if true, provide more than
a scintilla of evidence that the deed relied on by Williams may be invalid due to
fraud. In short, Johnson presented enough evidence for his suit to quiet title to
survive Williams’ no-evidence motion for summary judgment. 
2. Suit for Fraud
          In his second cause of action, Johnson alleges that Williams engaged in
common law and statutory fraud. To recover for common law fraud, Johnson must
prove that (1) Williams made a material representation; (2) the representation was
made with knowledge of its falsity or made recklessly without any knowledge of the
truth and as a positive assertion; (3) Williams made the representation with the
intention that it should be acted on by Johnson; and (4) Johnson acted in reliance on
the misrepresentation and thereby suffered injury. T.O. Stanley Boot Co. v. Bank of
El Paso, 847 S.W.2d 218, 222 (Tex. 1992); Texas Capital Sec., Inc. v. Sandefer, 58
S.W.3d 760, 771 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). 
          In his no-evidence motion for summary judgment, Williams contended that
Johnson had produced no evidence for any of the elements requisite to a claim for
common law fraud. Hence, to defeat the motion, Johnson was required to raise a
genuine issue of material fact as to each element of common law fraud. See Tex. R.
Civ. P. 166a(i). We conclude that he has done so. 
          First, Johnson’s affidavit contains a factual assertion that Williams represented
to him that he could stop the foreclosure sale of Johnson’s home while allowing
Johnson to remain as the home’s owner. This statement constitutes a material
representation. See Custom Leasing, Inc. v. Texas Bank & Trust Co., 516 S.W.2d
138, 142 (Tex. 1974) (stating that fact is material if it would likely affect conduct of 
reasonable person concerning transaction in question). Second, Johnson’s affidavit
states that Williams refused to inform him how much it would cost to stop the
foreclosure or to provide him with any documentation regarding the terms of their
arrangement. A specific factual allegation of such evasiveness, particularly when
carried out by a licensed attorney,


 raises more than a scintilla of evidence that
Williams knew his representations to Johnson were false. Third, Johnson’s affidavit
asserts that Williams: (1) stated that Bolton’s offer was unfavorable; (2) indicated that
he would not charge much to prevent the foreclosure sale of Johnson’s home; (3)
stated that Johnson could trust him (which Johnson indicates he did because Williams
was an attorney) and that he could not provide such a deal for everyone; and (4)
represented that Johnson would be able to keep his home. Such statements, if true,
provide more than a scintilla of evidence that Williams intended for Johnson to rely
on his representations. Finally, Johnson’s affidavit indicates that he relied on
Williams’ representations in entering their agreement and that he believe Williams
was providing him a loan that would be repaid in monthly installments. As a result
of his reliance on Williams material representations, Johnson suffered the injury of
losing his home. Thus, viewing the evidence in the light most favorable to Johnson,
the nonmovant, we conclude that the facts presented in his affidavit raise more than
a scintilla of evidence regarding each element of common law fraud challenged by
Williams. 
          A person commits statutory fraud in the course of a real estate transaction if (1)
he makes a false representation of a past or existing material fact, (2) for the purpose
of inducing a person to enter into a contract, and (3) the person relies on the
misrepresentation in entering the contract and suffers an injury as a result. Tex. Bus.
& Com. Code Ann. § 27.01(a)(1) (Vernon 2004); see also SMB Partners, Ltd. v.
Osloub, 4 S.W.3d 368, 372 (Tex. App.—Houston [1st Dist.] 1999, no pet.). In his no-evidence motion for summary judgment, Williams contended that Johnson failed to
produce any evidence showing that he was harmed after being induced by false
representations to enter into a contract with Williams. We disagree. 
          As noted, Johnson’s affidavit provides more than a scintilla of evidence
showing that: (1) Williams made a false representation regarding his intent to save
Johnson’s home; (2) Williams made the representation to induce Johnson into
entering a contract with him; and (3) Johnson relied on the representation in entering
the contract, but nevertheless lost his home. Thus, viewing the evidence in the light
most favorable to Johnson, the nonmovant, we conclude that the facts presented in
his affidavit raise more than a scintilla of evidence regarding each element of
statutory fraud challenged by Williams. 
 
3. Suit for Breach of Fiduciary Duty
          In his third cause of action, Johnson alleges that Williams breached his
fiduciary duty to Johnson arising from their attorney-client relationship. To prove a
claim for breach of fiduciary duty, a plaintiff must show (1) the existence of a
fiduciary relationship, (2) a breach of duty by the fiduciary, and (3) damage to the
plaintiff or a benefit to the fiduciary as a result of the breach. See Burrow v. Arce,
997 S.W.2d 229, 237 (Tex. 1999). In his motion for summary judgment, Williams
contended that Johnson had failed to produce any evidence showing the existence of
a fiduciary relationship or a breach of any fiduciary duty. We disagree. 
          In certain formal relationships, including the attorney-client relationship,
fiduciary duties arise as a matter of law. See Insurance Co. of North Am. v. Morris,
981 S.W.2d 667, 674 (Tex. 1998). According to the Restatement of the Law
Governing Lawyers:
A relationship of client and lawyer arises when: 
 
(1) a person manifests to a lawyer the person’s intent that the lawyer
provide legal services for the person; and either: 
 
(a) the lawyer manifests to the person consent to do so;
or 
 
(b) the lawyer fails to manifest lack of consent to do so,
and the lawyer knows or reasonably should know
that the person reasonably relies on the lawyer to
provide the services.

Restatement (Third) of the Law Governing Lawyers § 14 (2000); see also
Mellon Serv. Co. v. Touche Ross & Co., 17 S.W.3d 432, 437 (Tex. App.—Houston
[1st Dist.] 2000, no pet.) (stating attorney-client relationship is contractual). Here,
Johnson’s response to Williams’ no-evidence motion for summary judgment included
a copy of a letter sent by Williams to Midland Mortgage stating, “Please be advised
that I have been retained to represent Mr. Johnson in the foreclosure sale of his
property.” The letter, dated August 29, 2002, is printed on letterhead bearing the
name of Williams’ law firm and is signed by Williams. We conclude that this letter
suffices to raise more than a scintilla of evidence showing that an attorney-client
relationship existed between Williams and Johnson.



          Attorneys owe a number of fiduciary duties to their clients, including a duty to
fully disclose all material facts, a duty to refrain from self-dealing, and a duty of
“most abundant good faith, requiring absolute . . . candor, openness, and honesty and
the absence of any concealment or deception.” Deutsch v. Hoover, Bax & Slovacek,
L.L.P., 97 S.W.3d 179, 196–97 (Tex. App.—Houston [14th Dist.] 2002, no pet.)
(quotation omitted); see also Tex. Disciplinary R. Prof’l Conduct 1.08 (stating
that a lawyer shall not enter into a business transaction with a client unless the terms
of the transaction are fair and fully disclosed, the client is given an opportunity to
seek the advice of independent counsel, and the client consents in writing). 
          Johnson’s affidavit provides more than a scintilla of evidence that Williams
breached the fiduciary duties he owed Johnson and that the breach resulted in a
benefit to Williams. Specifically, Johnson’s affidavit indicates that Williams refused
to disclose the terms of their arrangement and instead advised Johnson to trust him. 
The affidavit also indicates, albeit somewhat indirectly, that Johnson did not consent
in writing to his agreement with Williams despite the evidence that they had entered
into a business transaction while in an attorney-client relationship. See Tex.
Disciplinary R. Prof’l Conduct 1.08 (stating that an attorney must obtain written
consent prior to entering a business transaction with a client). As a result of these
alleged breaches, Williams benefitted by obtaining a general warranty deed to
Johnson’s home. Thus, we conclude that more than a scintilla of evidence exists
showing that (1) Williams and Johnson entered an attorney-client relationship and (2)
Williams breached fiduciary duties owed to Johnson as a result of that relationship
to Williams’ benefit and to Johnson’s detriment. 
          In sum, we find that Johnson brought forth more than a scintilla of probative
evidence to raise a genuine issue of material fact regarding the elements of each of
his causes of action challenged by Williams’ no-evidence motion for summary
judgment. Consequently, we sustain Johnson’s first issue on appeal as to his suit to
quiet title and causes of action for fraud and breach of fiduciary duty. 
Johnson’s Request for Declaratory Relief

          In his first amended petition, Johnson sought a declaratory judgment
contending that “the warranty deed given to [Williams] was not a conveyance of
property but rather a security interest in the property.” In his second issue on appeal,
Johnson contends that the trial court erred by declining to consider his request for
declaratory relief because Williams’ no-evidence motion for summary judgment did
not ask the court to dispose of Johnson’s petition for a declaratory judgment. 
          In its order on Williams’ motion for summary judgment, the trial court stated
that its decision to dispose of Johnson’s claims for quiet title, fraud, and breach of
fiduciary duty “preclude[d] the need . . . to consider [Johnson’s ] request for
declaratory judgment.” Declaratory relief is available only when a justiciable
controversy exists concerning the rights or status of respective parties. See Texas
Ass’n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993). Had we
affirmed the trial court’s order as to Johnson’s claims for quiet title, fraud, and breach
of fiduciary duty, it would be necessary to consider whether a justiciable controversy
remained. However, because we have sustained Johnson’s first issue on appeal, it is
clear that a justiciable controversy exists regarding the respective rights of Johnson
and Williams relative to the deed executed on August 29, 2002. Thus, on remand, the
trial court should consider Johnson’s request for declaratory relief. It is therefore
unnecessary to discuss the substance of Johnson’s second issue on appeal. See Tex.
R. App. P. 47.1. 
CONCLUSION 
          We reverse the order of the trial court granting Williams’ no-evidence motion
for summary judgment and remand the cause to the trial court. 
 
 
                                                             Evelyn V. Keyes
                                                             Justice
 
Panel consists of Justices Keyes, Alcala, and Bland.